Robert D. LARSEN, Claimant
and Appellee,

v.

SIOUX FALLS SCHOOL DISTRICT
# 49–5, Employer and Appellant,

and

Rockwood Insurance Company,
Insurer and Appellant.

No. 18007.

Supreme Court of South Dakota.

Argued Feb. 9, 1993.

Reassigned April 8, 1993.

Decided Dec. 22, 1993.

Michael Hanlon, Sioux Falls, for claimant and appellee.

J.G. Shultz and James E. Moore of Woods, Fuller, Shultz and Smith, Sioux Falls, for appellants.

JOHNS, Circuit Judge (on reassignment).

This is a joint appeal by employer, Sioux Falls School District 49–5 (District), and its worker's compensation carrier, Rockwood Insurance Company (Rockwood), from a judgment of circuit court wherein the Honorable Steven L. Zinter reversed a summary judgment entered by the South Dakota Department of Labor, Division of Labor and Management (Department), in favor of District and Rockwood and against District's former employee, Robert D. Larsen (Larsen). The circuit court remanded the matter to Department for further proceedings. We reverse and remand.

### FACTS

Larsen was employed by District as a custodian when he suffered on-the-job injuries to his back in the years 1985, 1986, and 1987. Sometime in 1987 District adopted a requirement that custodians be able to lift a minimum of 100 pounds. While Larsen's treating physician released him for work in January 1988, Larsen was released with a 30 pound lifting restriction. Because this weight restriction was considered to be permanent in nature, District terminated Larsen's employment in October 1988.

In January 1989, Larsen's doctor assigned him, on the basis of the 1987 injury, a permanent *partial* impairment rating of 20% to the whole man. Rockwood then wrote to Larsen that the 20% rating would entitle him to $14,054.98 in permanent partial disability benefits. Rockwood also enclosed Depart-

ment Form 111 and instructed Larsen that if he wanted the permanent partial disability benefits, he should sign the form so that it could be filed with Department. Larsen signed the form on February 7, 1989, and it was approved by Department on March 29, 1989.

On October 20, 1989, Larsen filed a petition with Department in which he sought permanent *total* disability benefits for the same back injury. The petition did not allege that Larsen's physical condition had changed since the time he signed Form 111, nor has Larsen made any such contention throughout these proceedings.

On April 4, 1990, this Court decided *Whitney v. AGSCO Dakota,* 453 N.W.2d 847 (S.D. 1990). We recognized that a settlement agreement of an employee and employer may have the effect of a final determination of all matters embraced therein and as such would be conclusive of those matters in later proceedings involving the same parties. On May 1, 1991, District and Rockwood filed a motion for summary judgment based on *Whitney.* They argued that the Form 111 agreement signed by Larsen, like the agreement in *Whitney,* precluded him from recovering any additional benefits without a showing that his physical condition had changed. In response, Larsen argued that *Whitney* should not be retroactively applied. The Department rejected Larsen's arguments and found that *Whitney* was controlling in that it followed past precedents of this court and did not announce any new principles of law. Deputy Director James Marsh, in his written decision granting summary judgment, went on to state that where a settlement agreement does not contain an express reservation of continuing jurisdiction by Department, "additional claims as to all matters that could have been contemplated in the agreement are barred by res judicata." Judge Zinter reversed and remanded concluding that *Whitney* should have prospective application only.

Although Judge Zinter concluded that *Whitney* did not apply to the case at hand, he never entered any conclusion of law that the language of the settlement agreement, in and of itself, would or would not preclude Larsen

from pursuing a claim for permanent total disability. Rather, in Conclusion of Law II, he stated:

> That the Form 111 herein was intended by the Appellant [Larsen], Appellees [District and Rockwood] and the South Dakota Department of Labor to be a partial or interim agreement for the payment of permanent partial disability benefits and was not intended by the parties to be a final award.

Subsequent to Larsen filing his appeal to circuit court he also filed a motion for relief, pursuant to SDCL 15–6–60(b)(1) and (6). This motion was contingent upon the circuit court finding that Form 111 had the effect of a final judgment or order. The essence of this motion was that Larsen understood at the time he entered the settlement agreement that it was for permanent partial disability compensation only and that by signing it he was not waiving or otherwise releasing his right to any other benefits under the worker's compensation statutes. In Conclusion of Law XI, Judge Zinter determined that it was not necessary to decide this motion given his remand to Department.

## ISSUES

1. Should *Whitney's* holding on the question of the res judicata effect of worker's compensation settlement agreements have a prospective application only? We answer in the negative.

2. Because of the settlement agreement in the instant case, is Larsen barred by the doctrine of res judicata from litigating his claim for permanent total disability? We answer in the affirmative.

## ANALYSIS

■ The parties to this appeal have spent most of their energies arguing whether our decision in *Whitney, supra,* should have prospective application only. In *Matter of K.O. Lee Co.,* 489 N.W.2d 606, 610 (S.D.1992) this Court held that prospective application of a given decision "is entirely a question of law and, therefore, freely reviewable." *Id. citing Karras v. State, Dept. of Revenue,* 441 N.W.2d 678, 679 (S.D.1989). In making this

determination we have established three factors for our consideration:

(1) the decision to be applied prospectively must establish a new principle of law by either, overruling clear past precedent on which litigants have relied, or, by deciding an issue of first impression whose resolution was not clearly foreseen; (2) the court must weigh the merits and demerits of each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further retard its operation; and (3) the court must determine whether the decision would produce substantial inequitable results if applied retroactively.

*First Nat'l Bank v. Meyer,* 476 N.W.2d 267, 271 (S.D.1991) *citing Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296, 306 (1971); *Fisher v. Sears, Roebuck & Company,* 88 S.D. 1, 4–5, 214 N.W.2d 85, 87 (1974).

■ The first question we must answer is what was the holding in *Whitney* anent the res judicata effect of worker's compensation settlement agreements. We must then determine if its holding announced a new rule of law. If it did not, then our inquiry is ended since our analysis of the present settlement agreement will be the same whether we refer to *Whitney* or its precedents; for "by definition, without a new rule, there is no change in the law and the question of retroactivity is immaterial." *United States v. Bowen,* 500 F.2d 960, 975 (9th Cir.1974).

In *Whitney,* the employee entered into an agreement (which contained at least two provisions identical to those found in Form 111 signed by Larsen in this case) for permanent partial disability benefits based on an April, 1984 back injury. After the settlement he was diagnosed as having silicosis. It was only after this diagnosis that he made a claim that he was permanently and totally disabled because of his back injury and the silicosis. On appeal, he contended that Department had continuing jurisdiction to consider his claim for total permanent disability since this issue was not addressed in the stipulation and order. Upon our review of the stipulation and order we found that it did not contain any provision reserving continuing jurisdiction over issues not addressed and that, more specifically, it did not contain any expressed reservation over the issue of permanent total disability. We went on to quote the trial court with approval, saying:

The language in the Stipulation and approval did not lack finality. On the contrary, the Stipulation clearly permitted increased benefits only if Whitney's percent disability increased or if he required further medical treatment as a result of this working injury.

*Whitney,* 453 N.W.2d at 850. We then concluded that since the award did not contain language which left open a pending issue, all matters considered in the stipulation (including the nature and extent of disability) were res judicata. From this we held that because Whitney's alleged permanent total disability was due, in part, to the silicosis diagnosis and was not due to any aggravation of his 1984 injury, the language of the stipulation approved by the Department constituted a final determination of his claim and that, therefore, he was precluded from seeking further relief.

The holding in *Whitney* was decided on well settled law of this state that worker's compensation awards, whether by agreement of the parties [1] or following an adjudication, are res judicata as to all matters considered unless the department has reserved continuing jurisdiction over one or more questions. *Call v. Ben. & Protec. Order of Elks,* 307 N.W.2d 138 (S.D.1981); *Stowsand v. Jack Rabbit Lines,* 75 S.D. 11, 58 N.W.2d 298 (1953); *Salmon v. Denhart Elev.,* 72 S.D. 110, 30 N.W.2d 644 (1948); *Chittenden v. Jarvis,* 68 S.D. 5, 297 N.W. 787 (1941); *Bai-*

---

1. SDCL 62–7–5, prior to its 1991 amendment, provided:

If the employer and employee reach an agreement in regard to the compensation under this title, a memorandum thereof shall be filed with the department by the employer or employee, and unless the department shall, within twenty days, notify the employer and employee of its disapproval of the agreement by registered or certified letter sent to their addresses as given in the memorandum filed, the agreement shall stand as approved and be enforceable for all purposes under the provisions of this title.

*ley v. Hess,* 55 S.D. 602, 227 N.W. 69 (1929). A statutory exception to the finality rule is found in SDCL 62–7–33 [2] which gives the Department continuing jurisdiction to adjust payments when there is a physical change in the employee's condition from that of the last award. *Whitney,* 453 N.W.2d at 850–52 *citing Call, supra; Stender v. City of Miller,* 82 S.D. 334, 145 N.W.2d 913 (1966); *Middleton v. City of Watertown,* 70 S.D. 158, 16 N.W.2d 39 (1944).

Larsen argues that while *Whitney* did not overrule clear past precedents it did address the "issue of whether an agreement, apparently patterned after a form 111, was a 'final award.'" He goes on to argue, *citing Fisher v. Sears, Roebuck & Co., supra,* that the undisputed facts of this case reveal that the *Whitney* decision was not "clearly foreshadowed;" that it had an "unexpected impact;" that the "public (and the Department) relied upon a differing concept;" and that "considerations of fairness and justice, related to reasonable surprise and prejudice of those affected" call for prospective application.[3]

While some members of the general public and the Department may have operated under a misunderstanding of the law of this state, we are of the opinion that our decision in *Whitney* should not have come as a surprise to anyone in that it was based on common sense and clear precedents of this court. Given our holdings in *Call, Stowsand, Salmon, Chittenden,* and *Bailey,* Larsen has failed to explain sufficiently how *Whitney* could have been decided differently or how it decided an issue of first impression whose resolution was not clearly foreseen. Upon analysis, Larsen's complaint does not lie with our worker's compensation statutes or the case law interpreting them. Rather, his complaint lies with the former policy and practice of Department set forth in Judge Zinter's Findings of Fact X and XI:

## X.

It was the Department of Labor's long-standing policy and practice that, by signing the Form 111, injured employees were not waiving or releasing their right to pursue Worker's Compensation benefits other than permanent partial disability compensation.

## XI.

That policy and practice was publicized by the South Dakota Department of Labor to employees, employers, Worker's Compensation Insurers, and attorneys, and it was reiterated and emphasized that, with the exception of permanent partial disability benefits, the Form 111 was not a final award subject to the change of condition requirement of SDCL 62–7–33. The South Dakota Department of Labor advised injured employees that they should sign Form 111 in order to receive permanent partial disability benefits and, by signing the Form 111, they were not waiving or releasing their rights to pursue Worker's Compensation benefits other than permanent partial disability compensation.

Considering the language that was used in a Form 111 and *Whitney's* precedents, we are at a loss to explain Department's former practice. This is especially true in light of certain language that is found in *Call, supra.*

2. SDCL 62–7–33 provides:
   Any payment, including medical payments under § 62–4–1, made or to be made under this title may be reviewed by the department of labor pursuant to § 62–7–12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition warrants such action.

3. In *Fisher, supra,* we quoted from a New Jersey case as follows:
   [A]ppellate courts in this State and elsewhere have long recognized themselves as empowered and justified in confining the effect of a decision of first impression or of novel or unexpected impact to prospective application if considerations of fairness and justice, related to reasonable surprise and prejudice of those affected, seem to call for such treatment.
   *Id.* 214 N.W.2d at 88 (citations omitted). We went on to say that:
   It may also apply to cases of first impression which seek clarification of statutory interpretations, especially when the public has reasonably relied on a differing concept.
   *Id.*

In *Call,* we gave this admonition concerning the reservation of continuing jurisdiction:

> We note ... that the practice of reserving continuing jurisdiction should be used cautiously and only in exceptional cases. The retention of continuing jurisdiction should not be used to provide a secondary means of reviewing an otherwise final order. Additionally, the department may retain continuing jurisdiction over one or more specific questions or issues, but should enter a final order in all other respects.

307 N.W.2d at 140 (citation omitted). In that same case we also mentioned, in a footnote, the significance of certain language which appeared in the settlement agreement in *Whitney* and in the instant case which is to the effect that if, in the future, an employee's percent of disability should increase as a result of his working injury or if additional medical treatment is required, then the employer will be obligated to pay the same. Although it is apparently dictum, we said "the 'provision purporting to authorize a review in the event that claimant incurred further disability or medical expenses' is nothing more than a restatement of the statutory provision permitting a change in payment based upon a change in condition."[4] *Id.*

The case precedent of this court is contrary to the Department's settlement agreement policy, practice, and procedure. The fact, however, that the Department may have given faulty legal advice does not change the fact that *Whitney* neither overruled clear past precedents nor did it decide an issue of first impression whose resolution was not clearly foreseen. We, therefore, conclude that *Whitney* may be retroactively applied and we reverse the trial court on this issue.

■ The second issue is whether the language of the present settlement agreement bars Larsen from now raising the issue of permanent total disability without any evidence of a change in physical condition. As stated earlier, a settlement of a compensation claim which is properly approved per SDCL 62–7–5 operates as an adjudication of the facts agreed upon in the settlement including the employer's obligation to pay compensation. *Salmon, supra.* Thus, a matter may not be later reopened absent an express reservation of jurisdiction by Department or a change in the employee's physical condition which change is a result of his working injury.

■ Department granted District's and Rockwood's joint motion for summary judgment on Larsen's claim for permanent total disability. In doing so it reasoned that the claim for permanent total disability was barred by res judicata as a result of an award for permanent partial disability in the amount of $14,054.98. Whether Larsen's new claim is barred by res judicata and/or whether Department reserved jurisdiction over the question of total permanent disability are questions of law for this court to decide by looking to the language of the agreement.

The agreement in the instant case is entitled "Agreement as to Compensation for Permanent Partial or Permanent Total Disability, or Rehabilitation Benefits." It reflects that the parties to it are Larsen, District and Rockwood. It reflects that Larsen was injured while in the course of his employment with District on November 17, 1987 and the nature of his injury was "Employee was moping [sic] floors and moving desks, pulled lower back." It reflects that Larsen has not worked, as a result of his injury, from the date of his injury "forward." It reflects that 66–2/3% of his average weekly wage was $337.85 and that the maximum amount payable to him weekly under our workers' compensation law was $225.24. It reflects that the amount of temporary total disability compensation paid to him, per SDCL 62–4–3, was $13,289.18 and that he was to receive $ "–0–" compensation for rehabilitation benefits, per SDCL 62–4–5.1. It reflects that for permanent partial disability, per SDCL 62–4–6(24), "Employer and Employee agree that for the injury incurred by Employee, he/she shall receive additional compensation in the amount of $14,054.98." Finally, it reflects

---

**4.** We agree with the *Call, supra,* court that the questioned language is merely a restatement of

SDCL 62–7–33.

that if Larsen's "percent disability increases as a result of such working injury" or if medical treatment is required in the future as a result of the injury, then District would be obligated to pay Larsen "such additional compensation as is medically determined to be applicable" and such future medical expenses, all "in compliance with the statute in effect at the time of the initial injury."

Even though the agreement does not explicitly state that Larsen's permanent impairment rating is 20% to the whole man, it does clearly reflect that he is accepting the sum of $14,054.98 for his permanent disability. (In other words, he recognizes that his continuing disability is worth this amount.) Furthermore, nowhere within this agreement do we find any language that his settlement is not a final determination of Larsen's present physical condition and his right to compensation therefor. Ergo, we conclude that this agreement, as of the date of its entry, constitutes a final determination in respect to Larsen's physical condition and his resultant degree of impairment. We further and finally conclude that without some mention in the agreement that Larsen's present degree of impairment may be of such a nature that it totally incapacitates him from working at any occupation which would bring him an income,[5] he did not preserve his right to pursue this issue and no jurisdiction was reserved unto Department over the same.

■ In conclusion, we hold that Larsen is barred by the doctrine of res judicata from pursuing a claim for total permanent disability benefits because he previously entered a Department approved settlement for permanent partial benefits; the claims for both types of benefits are based on the same injury; there is no change of physical condition since settlement;[6] Larsen did not re-

serve for himself, in the settlement document, the right to pursue any potential claim for permanent total disability; Department did not reserve continuing jurisdiction over this issue. The trial court is reversed and this matter is remanded for further proceedings.

MILLER, C.J., and HENDERSON, J., concur.

WUEST and SABERS, JJ., dissent.

JOHNS, Circuit Judge, for AMUNDSON, J., disqualified.

WUEST, Justice (dissenting).

Having reviewed the record in this case, we should note several of Judge Zinter's Findings of Fact and Conclusions of Law including those referred to in Justice Sabers' dissent:

### FINDINGS OF FACT

#### IV.

[After Larsen received the 20% permanent partial disability rating from his physician, the District's insurance company] wrote to the Appellant advising him that said rating would entitle him to $14,054.98 in permanent partial disability benefits and enclosed a Department of Labor Form 111, instructing the Appellant to sign the Form 111 so that the Form could be filed with the Department of Labor.

#### V.

The enclosed Form 111 was a 1980 version of the Department of Labor Form 111 and reflected that, pursuant to SDCL 62–4–6(24), the Appellant would receive $14,-

---

5. SDCL 62–4–6(23) defines a total disability, in part, as

    "any other injury which totally incapacitates the employee from working at any occupation which brings him an income."

6. In *Mills v. Spink Elec. Co-op*, 442 N.W.2d 243, 246 (S.D.1989), we quoted from 3 Larson, *The Law of Workmen's Compensation*, § 81.31(a) (1988) as to what may constitute a change in physical condition justifying a reopening and modification of an award. We said:

This change may take such forms as progression, deterioration, or aggravation of the compensable condition, achievement of disabling character by a previously symptomatic complaint, appearance of new and more serious features, such as discovery of a disc herniation in a back case, failure to recover within the time originally predicted, and superimposition or worsening of a neurotic condition.

054.98 in permanent partial disability benefits, and that Form 111 was approved by the Department of Labor on March 29, 1989.

\* \* \* \* \* \*

## VIII.

The Department of Labor Form 111 was created and implemented by the South Dakota Department of Labor to document the payment of permanent partial disability benefits.

## IX.

The Department of Labor required that the Form 111 be completed and filed with the South Dakota Department of Labor when paying permanent partial disability benefits.

## X.

It was the Department of Labor's long-standing policy and practice that, by signing the Form 111, injured employees were not waiving or releasing their right to pursue Worker's Compensation benefits other than permanent partial disability compensation.

## XI.

That policy and practice was publicized by the South Dakota Department of Labor to employees, employers, Worker's Compensation Insurers, and attorneys, and it was reiterated and emphasized that, with the exception of permanent partial disability benefits, the Form 111 was not a final award subject to the change of condition requirement at SDCL 62–7–33. The South Dakota Department of Labor advised injured employees that they should sign the Form 111 in order to receive permanent partial disability benefits and, by signing the Form 111, they were not waiving or releasing their rights to pursue Worker's Compensation benefits other than permanent partial disability compensation.

## XII.

The Appellant herein was aware of and familiar with the Department of Labor's policy and practice as he was advised of the policy and practice by the South Department of Labor when he received permanent partial disability benefits following one of his previous back injuries.

\* \* \* \* \* \*

## CONCLUSIONS OF LAW

## II.

That the Form 111 herein was intended by the Appellant, Appellees and the South Dakota Department of Labor to be a partial or interim agreement for the payment of permanent partial disability benefits and was not intended by the parties to be a final award.

Judge Zinter's findings are supported by evidence found in the record. It appears to be undisputed that none of the parties to the Form 111 signed by Larsen intended it to be a "final" agreement, nor was it shown that any party believed that Larsen was waiving his rights to future benefits. In fact, after the *Whitney* decision, the Department of Labor changed the language of its Form 111 to specifically state that signing the form did not constitute a final release, that the purpose of the form was merely for payment of permanent partial disability benefits.

Judge Zinter's Conclusions of Law include an analysis of whether *Whitney v. AGSCO Dakota,* 453 N.W.2d 847 (S.D.1990) should be applied retroactively or prospectively. He concluded that the Department had not given consideration to all three factors enumerated in *Fisher v. Sears, Roebuck & Co.,* 214 N.W.2d 85 (S.D.1974), and that the *Whitney* decision should only be given prospective application. I agree with Justice Sabers' opinion, however, that under the facts of the present case, the issue of retroactive or prospective application of *Whitney* need not be reached.

Judge Zinter's decision should be affirmed.

SABERS, Justice (dissenting).

I dissent. I would affirm the Judgment of Circuit Court Judge Zinter which remanded the case to the "South Dakota Department of Labor, Division of Labor and Management, for further proceedings."

Contrary to the conference opinion of Judge Johns, the case is controlled by Conclusion of Law II, which provides:

> That the Form 111 herein was intended by the Appellant, Appellees and the South Dakota Department of Labor to be a partial or interim agreement for the payment of permanent partial disability benefits and was not intended by the parties to be a final award.

This Conclusion is supported in this case by Findings of Fact VIII, IX, X, XI, and XII.

These Findings of Fact are not clearly erroneous and this Conclusion of Law is correct. Therefore, it is not even necessary to discuss the retroactivity of *Whitney v. AG-SCO Dakota.*

In this case, the Department of Labor Form 111 was not a "final award" for benefits other than permanent partial disability and Larsen is not precluded from seeking permanent total disability benefits. Therefore, we should affirm.