**James D. WELCH, Employee, Claimant, and Appellant,**

v.

**AUTOMOTIVE COMPANY, Employer and Appellee,**

and

**St. Paul Fire and Marine Insurance Company, Insurer and Appellee.**

No. 18860.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1995.

Decided March 8, 1995.

Robert M. Nash of Wilson, Olson, Nash & Becker, Rapid City, for appellant.

Dennis H. Hill of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellees.

SABERS, Justice.

Worker injured his wrist and shoulder during course of employment. He signed a settlement Memorandum on permanent partial disability. Hearing examiner found that Memorandum was final as to permanent partial disability benefits, and that worker was not entitled to permanent total disability benefits because he was a malingerer. We affirm.

## FACTS

On September 30, 1988, James D. Welch fell from a combine while he was installing an

auger during the course of his employment as a mechanic with Automotive Co., in Lemmon, South Dakota. He injured his right wrist and dislocated his right shoulder. Employer and Insurer denied benefits. After a hearing, the parties entered into an agreement on December 28, 1989 which was approved by the Department of Labor (Department). The agreement entitled Welch to collect temporary total disability benefits from April 24, 1989 through December 15, 1989, at $261.25 per week, for a total of $8,882.50. Welch's medical expenses were paid and he agreed to have the operation recommended by Dr. Dale Anderson, his physician. Future benefits were set at $261.25 per week until his release to return to work. The agreement further provided that the "case will be held open pending surgery and recovery to determine whether any permanent disability benefits should be payable after [Welch] is released to return to work." The Department kept the case open until Welch recovered from surgery to determine if any permanent disability remained after the operation.

After the surgery, Welch continued to have problems with his wrist, requiring multiple surgeries. He attended a work-hardening program. Dr. Anderson determined that the program improved his condition and lessened his pain, but that he was still experiencing problems with weakness and performing functional activities. Dr. Anderson believed that strength and endurance in his fingers and forearm would return with use and exercise.

On April 8, 1991, Welch signed a "Worker's Compensation Memorandum of Payment for Permanent Partial Impairment." (Memorandum) He received $14,111.82 in permanent partial disability benefits, calculated by multiplying his 27 percent impairment rating by 200 weeks, the number of weeks allowed for the complete and permanent loss of an arm, then multiplying that result, 54, by his weekly compensation rate of $261.33.[1] The

last paragraph of the Memorandum provided that "[Welch] is not waiving the right to pursue benefits *other than permanent partial disability*, to which he/she may be entitled under South Dakota Worker's Compensation laws." (Emphasis added.)

On March 25, 1992, Welch requested a hearing for increased worker's compensation benefits and medical costs on permanent partial disability, and job retraining benefits and vocational disability on permanent total disability. The hearing examiner determined that the Memorandum settled any permanent partial disability claims. The examiner held that Welch must demonstrate a substantial physical change of condition to reopen the claim and found that Welch did not. The examiner found that Welch's testimony relating to change in condition carried "considerably less weight" because three witnesses observed Welch doing mechanical work and using tools on automobiles. After Dr. Anderson removed pins and wires from Welch's right hand and wrist, he increased his physical impairment rating from 27 to 30 percent. Based on medical testimony, the examiner found that the 3 percent increase was due to subjective complaints of pain, not due to any physical impairment increase. The examiner concluded that Welch's increased pain and economic changes, the failure of his automotive repair venture with his son, did not constitute a "substantial change."

The circuit court remanded to the examiner to determine whether Welch was a malingerer in considering his permanent total disability claim. The examiner specifically found that Welch was a malingerer, which he defined as the "feigning or intentional exaggeration of a disability in order to draw compensation benefits." The circuit court affirmed and Welch appeals.

1. Insurer claims Welch received more than he is actually entitled under State statute. Payment was calculated using the figure for loss of the *entire* arm, not the hand or wrist under SDCL 62–4–6(13). Insurer claims SDCL 62–4–6(12) should have been used, which would have result-

ed in benefits of $11,759.85, or $2,350.00 less than Welch received.

The increase in permanent partial disability Welch is claiming is 3 percent, or a 30 percent impairment rating which would amount to $15,679.80 using the same formula.

We will not disturb the agency's factual findings unless they are clearly erroneous. *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D.1994). Conclusions of law are fully reviewable. *Id.* (citing *Permann v. Dept. of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113 (S.D.1987)). Whether a claimant is in the odd-lot category and entitled to permanent total disability is a question of fact. *Id.* (citing *Shepherd v. Moorman Mfg.*, 467 N.W.2d 916, 919 (S.D.1991)).

**1. Whether the Memorandum was final as to permanent partial disability benefits?**

■ Employer and Insurer claim that the Memorandum precludes any further involvement by Department as to permanent partial disability benefits. The Memorandum provides that Welch "is not waiving the right to pursue benefits other than permanent partial disability[.]" The Memorandum was found to be final as to permanent partial disability benefits. A stipulation between insurer and employee which is filed and approved by Department may have the effect of a final determination. *Larsen v. Sioux Falls School Dist. No. 49-5*, 509 N.W.2d 703, 705 (S.D. 1993); *Whitney v. AGSCO Dakota*, 453 N.W.2d 847, 850 (S.D.1990) (citation omitted). In construing Department's Form 111, which was used for Welch's Memorandum, *Larsen* stated:

[W]orker's compensation awards, whether by agreement of the parties or following an adjudication, are res judicata as to all matters considered unless the [D]epartment has reserved continuing jurisdiction over one or more questions.... A statutory exception to the finality rule is found in SDCL 62-7-33 which gives the Department continuing jurisdiction to adjust pay-

ments when there is a physical change in the employee's condition from that of the last award.

509 N.W.2d at 706-07 (citations omitted).

■ Welch's Memorandum (Form 111) does "not contain language which le[aves] open a pending issue." *Whitney*, 453 N.W.2d at 850. All matters considered in the Memorandum including the nature and extent of disability are res judicata.[2] *Id.* Welch must prove a "material and substantial physical change" for Department to change permanent partial disability benefits. *Id.* at 852 (citation omitted). Therefore, the issue is whether Welch proved the necessary change of condition.

**2. Whether Welch proved the necessary change of condition to increase permanent partial disability benefits?**

■ Welch claims his 3 percent increase in impairment, increased pain, inability to find suitable employment, and inability to recover as expected constitute a "change in condition" under SDCL 62-7-33.[3] Worker's compensation statutes are liberally construed in favor of injured employees. *Mills v. Spink Elec. Co-op.*, 442 N.W.2d 243, 246 (S.D.1989). In interpreting "change in condition," we have stated:

The 'change in condition' which justifies reopening and modification is ordinarily a change, for better or worse in claimant's *physical* condition. This change may take such forms as progression, deterioration, or aggravation of the compensable condition, achievement of disabling character by a previously symptomatic complaint, appearance of new and more serious features, such as discovery of a disc herniation in a back case, failure to recover within the time originally predicted, and super-

---

2. In *Larsen*, 509 N.W.2d at 711 (Sabers, J. dissenting), I stated Form 111 did not constitute a "final award" for permanent total disability (odd-lot) even though it was final as to permanent partial disability because the trial court so found. Here, the examiner found that Welch was a malingerer and considered testimony from vocational experts on Welch's employment prospects, finding that no permanent total disability payments were warranted. *See infra.*

3. SDCL 62-7-33 provides in part:

Any payment ... made or to be made under this title may be reviewed by [Department] ... if the [D]epartment finds that a change in the condition of the employee warrants such action ... *Id.*

imposition or worsening of a neurotic condition. 3 Larson, The Law of Workmen's Compensation, § 81.31(a) (1988).

*Id.* (emphasis added) (claimant sought unanticipated medical expenses due to change in physical condition, so Department could reopen).

■ The examiner found and the circuit court affirmed that reopening was not warranted. Welch admitted that he could do the same work as he could at the time of the Memorandum:

> Q. Jim, is there anything you can't do now that you could when you signed the [Memorandum]?
>
> A. Probably about the same.

"[A] party cannot claim the benefit of a version of the facts more favorable than given in testimony." *Guthmiller v. South Dakota Dept. of Transp.*, 502 N.W.2d 586, 589 (S.D. 1993) (citations omitted). By his own testimony, Welch had not experienced a substantial change in condition. Medical testimony revealed that the 3 percent increase was due to Welch's complaints and not due to any objective increase in impairment. Medical testimony also indicated that Welch had not experienced a change in physical condition following the 27 percent impairment rating. Dr. Anderson stated that his "actual physical impairment did not change at all" from 1990 to 1992, the year of the hearing. He stated that "the increase in numbers is based primarily on increase in subjective complaints of pain and discomfort." [4] The examiner found that Welch's complaints were purely subjective and did not constitute a material and substantial physical change in condition. *See Whitney*, 453 N.W.2d at 852; *see also Wilson Concrete Co. v. Rork*, 216 Neb. 447, 343 N.W.2d 764, 767 (1984) (some additional pain from the injury was insufficient to show "a

material and substantial change for the worse in his condition"); *but see Shepherd*, 467 N.W.2d at 919 (debilitating pain may place claimant in odd-lot category for total disability benefits). As long as there is some substantial evidence in the record to support the examiner's finding, we will affirm it. *Shepherd*, 467 N.W.2d at 919–920. Welch has not shown this finding to be error.

### 3. Whether Welch is entitled to permanent total disability benefits under the odd-lot category?

Welch claims he is no longer able to perform duties of a mechanic and other jobs do not have comparable wages, rendering him totally disabled.

> [A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income.

*Shepherd*, 467 N.W.2d at 918 (citations omitted).

■ The burden is on the claimant to make a prima facie showing of total disability. *Id.* If it is "obvious" that claimant is in the odd-lot category, then the burden shifts to the employer to show that suitable employment is available in the community for persons with claimant's limitations. *Id.* If it is not "obvious" that the claimant is in the odd-lot category, then "the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made 'reasonable efforts' to find work." *Id.* (citing 2 Larson, *supra* at § 57.61(d)).

> When an employee is unable to return to his former occupation because he is unable to perform the duties required of him due to the fact that he experiences substantial pain while so engaged, he is entitled to permanent and total disability benefits[.]

> .    .    .    .    .

---

**4.** Dr. Anderson also stated that Welch has degenerative arthritis in his right wrist. In his opinion, Welch had a permanent partial disability of approximately 10 percent before his injury. He

also noted that some pain and discomfort were due to this condition and the degenerative nature of the disease could lead to an increased rating on its own.

A ... claimant who persuades the trier of fact that he is in ... *continuous, severe and debilitating pain* ... has made a prima facie case that he is in the odd-lot category, and the burden then shifts to the employer to show availability of suitable work.

*Shepherd,* 467 N.W.2d at 919 (emphasis added) (citations omitted).

■ Our review of Department's determination compels this question: "Is there any substantial evidence in the record that supports the Department's conclusion that claimant does not experience the kind of pain which he claims?" *Id.* at 920.

Substantial evidence was presented that Welch did not suffer from "continuous, severe and debilitating pain" which prevents him from performing the duties of a mechanic. *Id.* The examiner denied odd-lot category benefits because he found Welch to be a malingerer. One doctor indicated that there was no reason Welch could not perform the functions of a mechanic. Several people observed Welch doing mechanical work without visible pain or difficulty after his injury. In February of 1991, his landlord saw him doing mechanical work without apparent difficulty, and Welch admitted to him that he was getting better. The Chief of Police of Lemmon, while serving process on two occasions, observed Welch using wrenches. The Chief routinely observed Welch doing mechanical work at his shop. He also observed Welch using a ratchet with his right hand on another occasion. Another police officer serving process observed Welch using a rachet, probably with his right hand, with no visible evidence of pain. Welch told the officer that he had overhauled and rebuilt an engine on a pickup he was trying to sell. Approximately three weeks before the hearing, the officer observed Welch carrying automotive parts without any apparent difficulty.[5] Both officers observed Welch performing several physical tasks without any visible pain or

difficulty until a few weeks before the hearing. It is up to the trier of fact to weigh the testimony, resolve conflicting testimony, and evaluate the credibility of witnesses. *Kennedy v. Hubbard Milling Co.,* 465 N.W.2d 792, 795 (S.D.1991). We will not usurp the function of the trier of fact. *See Id.*

Welch argues that the examiner did not correctly follow SDCL 62–4–6, and *Cozine v. Midwest Coast Transport, Inc.,* 454 N.W.2d 548 (S.D.1990), which require the examiner to consider the evidence as a whole when calculating the amount of compensation for loss of use of a part of the body. The examiner must consider more than the medical impairment rating; other factors such as the testimony of vocational experts regarding loss of employability, and other testimony must be considered to determine loss of use. *Id.* at 552. The construction and application of statutes are questions of law which are reviewed de novo. *Brown v. Egan Consol. Sch. Dist. No. 50–2,* 449 N.W.2d 259, 260 (S.D.1989).

Welch claims the examiner should consider his "actual disability and vocational loss based upon the likelihood of his future unemployment and his limitation of access to jobs paying wages comparable to the wages he previously earned." The examiner considered the testimony of vocational experts, medical experts, and the testimony of Welch and other witnesses to determine Welch's physical condition had not substantially changed and he was able to perform as a mechanic. Although the examiner did not specifically state he was following *Cozine,* 454 N.W.2d 548, he considered those factors in his decision, in addition to the impairment rating.

There is substantial evidence in the record to support the trial court's finding that Welch is not entitled to any odd-lot category benefits. *Shepherd,* 467 N.W.2d at 919–20. Welch has failed to show this finding to be clearly erroneous.

---

5. The police made routine patrol visits to Welch's business. It appears he had a suspended or revoked license for failure to pay a fine. Welch would drive the vehicles that he was repairing and officers would come over to warn or ticket him.

We have considered Welch's other claims and consider them to be without merit.[6] We affirm.

MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[6.] Welch claims that approximately 18 days before the hearing, opposing counsel advised him that he was considering the use of a vocational expert. Welch advised opposing counsel that he would object based on surprise and lack of notice. Welch states he did not receive a copy of the expert's report until four days before the hearing, allowing insufficient time for review. Despite his objection, the examiner allowed the expert's testimony and report.

Welch did not present evidence to make a prima facie case for odd-lot category benefits and he did not demonstrate reasonable efforts to find work. Since the employer did not have the burden of persuasion to prove the availability of suitable employment, the use of the alleged "surprise" vocational expert evidence was immaterial. *See Shepherd*, 467 N.W.2d at 918–19.

Welch must demonstrate that Department's alleged "procedural violations prejudiced his substantial rights." *Ashland v. South Dakota Dept. of Labor*, 321 N.W.2d 103, 105 (S.D.1982) (citations omitted). Prejudicial error "must produce some effect upon the final result and affect rights of the party assigning it." *Koupal & Anton, Inc. v. Wieczorek*, 375 N.W.2d 639, 641 (S.D.1985) (citation omitted).

"[A] decision to permit the use of expert testimony, even on short notice, is within the discretion of the [trier of fact].... [and the trier of fact] should consider alternative methods short of exclusion for preventing prejudice, e.g., granting a continuance[.]" *Newmaster v. Mahmood*, 361 N.W.2d 130, 133 (Minn.App.1985) (citations omitted). Welch did not request additional time to prepare. The examiner did not need to consider whether other jobs were available because the burden never shifted to Insurer and Welch had not shown that he made any reasonable efforts to secure employment. Therefore, no prejudicial error has been shown.