#26581-a-SLZ

**2013 S.D. 76**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DAVID NIELSEN,                                    Plaintiff and Appellee,

  v.

LOGS UNLIMITED, INC.,
A SOUTH DAKOTA CORPORATION;
ABSOLUTE LOG HOMES AND
RESTORATION, INC., A SOUTH
DAKOTA CORPORATION; THOMAS
SCHRAMEL; STEPHANIE WOOD;
and S & S EQUIPMENT, LLC,                        Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge
* * * *

ROGER A. TELLINGHUISEN
MICHAEL V. WHEELER of
DeMersseman, Jensen, Tellinghuisen,
  Stanton & Huffman, LLP
Rapid City, South Dakota                    Attorneys for plaintiff
              and appellee.


GEORGE J. NELSON of
Abourezk & Zephier, PC
Rapid City, South Dakota                    Attorneys for defendants
              and appellants.

* * * *

            CONSIDERED ON BRIEFS
            ON AUGUST 27, 2013
            OPINION FILED **10/23/13**

#26581

ZINTER, Justice

[¶1.]    David Nielsen obtained a judgment against Logs Unlimited, Inc. (Logs Unlimited). The corporation subsequently transferred its assets to Thomas Schramel, Schramel's daughter Stephanie Wood, and Absolute Log Homes and Restoration, Inc. Schramel was the sole shareholder, director, and officer of both corporations. Proceeds from the transfer were used to pay some of Logs Unlimited's creditors, but Nielsen was not one of the creditors paid. Nielsen sued, claiming that Logs Unlimited fraudulently transferred its assets to prevent satisfaction of his judgment. The circuit court found that the transfer was fraudulent, and the court set it aside. We affirm.

*Facts and Procedural History*

[¶2.]    In July 2010, Nielsen obtained a $35,374.95 judgment against Logs Unlimited. A writ of execution was returned unsatisfied. The sheriff's return indicated that Logs Unlimited had been dissolved, a new corporation named Absolute Log Homes and Restoration, Inc. (Absolute Log Homes) had been formed, and a bank's lien on Logs Unlimited's assets had carried over to the new corporation.

[¶3.]    In a July 2011 debtor's examination, Schramel disclosed that about two weeks after Nielsen obtained the judgment, Logs Unlimited held a special meeting of the corporation. Nielsen's judgment was discussed, and Schramel decided to dissolve Logs Unlimited and lease its assets either to Schramel or to a new corporation "effective immediately."

[¶4.] After the meeting, Schramel formed Absolute Log Homes. As with Logs Unlimited, Schramel was the sole shareholder, officer, and director of the corporation. Absolute Log Homes also maintained the same address, phone number, and fax number as Logs Unlimited.

[¶5.] The minutes of a second special meeting of Logs Unlimited confirmed that Absolute Log Homes was leasing Logs Unlimited's assets as of October 2010. The minutes also reflected that Absolute Log Homes had been paying some of Logs Unlimited's debts. Those debts included secured loans ($132,000 from First National Bank and $9,100 from Telco Credit Union (Telco)) and unsecured credit card debt ($16,800). The minutes further disclosed that Logs Unlimited approved the sale of its assets to Schramel and Wood for $141,000, the approximate amount of the secured debt.

[¶6.] Financing for the transfer of assets was arranged through a personal loan obtained by Schramel and Wood. The loan proceeds were used to pay Logs Unlimited's secured debt, unsecured credit card debt, and other liabilities, including a personal loan Schramel had made to Logs Unlimited. However, Nielsen's judgment was not satisfied.

[¶7.] Nielsen sued Logs Unlimited, claiming that it had fraudulently transferred its assets to Schramel, Wood, and Absolute Log Homes.[1] Nielsen contended that Logs Unlimited transferred the assets without receiving fair

---

1. During trial, it was discovered that after the transfer, Schramel and Wood formed S & S Equipment, LLC, and capitalized it with vehicles and equipment they purchased from Logs Unlimited. S & S Equipment was added as a defendant.

consideration and that it transferred the assets to prevent Nielsen from satisfying his judgment.

[¶8.] Conflicting evidence was presented at trial concerning the fair market value of the transferred assets. Nielsen's expert witness, certified public accountant Paul Thorstenson, testified that the fair market value was $259,215. His opinion was based on the values claimed on both corporations' 2011 tax returns.

[¶9.] Logs Unlimited called two valuation experts: Jerry Casteel, an auction and real estate company owner, and Garrett Tenbroek, Logs Unlimited's accountant. Casteel testified that his May 2012 appraisal of the assets reflected a fair market value of $150,440. Casteel acknowledged that his appraisal occurred after the transfer and did not include the value of buildings and improvements. Tenbroek testified that the fair market value of the assets was approximately $150,000. However, he conceded that, as the accountant for Logs Unlimited, he had indicated that the fair market value was $259,215 on the corporation's 2011 tax return. Tenbroek explained that the value listed on the tax return was derived from Wood's internet research and Schramel's best estimate of what the assets were worth.[2]

[¶10.] The circuit court found that the fair market value of the assets far exceeded the $183,500 consideration given by Schramel and Wood ($154,900 for the assets plus forgiveness of Schramel's $28,600 personal loan to Logs Unlimited). The

---

2. Schramel testified that, in July 2010, he valued the assets at $131,225. However, Schramel admitted that there were assets omitted from this valuation.

court ultimately found that the transfer was fraudulent. The court set the transfer aside. Logs Unlimited appeals, contesting a number of the court's findings of fact.

*Decision*

[¶11.] South Dakota has adopted the Uniform Fraudulent Transfer Act (the Act). *Prairie Lakes Health Care Sys., Inc. v. Wookey*, 1998 S.D. 99, ¶ 6, 583 N.W.2d 405, 410. The purpose of the Act "is to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." *Glimcher Supermall Venture, LLC v. Coleman Co.*, 2007 S.D. 98, ¶ 9, 739 N.W.2d 815, 820 (citation omitted).

[¶12.] The Act "subdivides fraudulent transactions into two categories: actually fraudulent transfers . . . and constructively fraudulent transfers[.]" *Prairie Lakes Health Care Sys., Inc.*, 1998 S.D. 99, ¶ 7, 583 N.W.2d at 411. Actually fraudulent transfers are defined as follows:

> (a) Any transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > (1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

SDCL 54-8A-4(a)(1). The Act also identifies "badges of fraud" that are nonexclusive, indicative factors of actual intent to defraud a creditor:

> (b) In determining actual intent under subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
> > (1) The transfer or obligation was to an insider;
> > (2) The debtor retained possession or control of the property transferred after the transfer;
> > (3) The transfer or obligation was disclosed or concealed;
> > (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

     (5)   The transfer was of substantially all the debtor's assets;

     (6)   The debtor absconded;

     (7)   The debtor removed or concealed assets;

     (8)   The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

     (9)   The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

     (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

     (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

SDCL 54-8A-4(b). "No factor or set of factors need be given talismanic significance—they are only indicia, which by themselves or in combination with others may give rise to an inference of fraudulent intent." *Prairie Lakes Health Care Sys., Inc.*, 1998 S.D. 99, ¶ 13, 583 N.W.2d at 412-13 (citation omitted). But "a '[c]lose relationship [between the grantor and the grantee] justifies a careful scrutiny of the challenged transaction for badges of fraud[.]'" *Kary v. Kary*, 318 N.W.2d 334, 338 (S.D. 1982) (first and second alterations in original) (quoting *Counts v. Kary*, 67 S.D. 607, 612, 297 N.W. 442, 444 (1941)).

[¶13.]      In determining whether Logs Unlimited's transfer was fraudulent, the circuit court found that: the transfer was to insiders (Schramel, Wood, Absolute Log Homes, and S & S Equipment); the transfer was not disclosed to Nielsen; the transfer was of substantially all of Logs Unlimited's assets; following the transfer, all of Logs Unlimited's outstanding liabilities were paid, except for Nielsen's judgment and a shareholder loan that Schramel had made to the company; after the transfer, Logs Unlimited was insolvent; and, Nielsen obtained the judgment against

Logs Unlimited before the transfer. The court also found that Logs Unlimited would have had $114,000 in equity available after the transfer had the assets been transferred for their fair market value. The court's findings explained that "[t]he values shown on the 2011 tax return of [Logs Unlimited] [was] the fair market value[ ] of the property at the time of the transfer," and according to that tax return, "the fair market value of [Logs Unlimited's] assets [$259,215] minus liabilities . . . [equaled] $114,000." The court ultimately found that Logs Unlimited did not receive "reasonably equivalent value in exchange for the transfer," and Logs Unlimited's "transfer of its assets . . . was made with the actual intent to hinder, delay, or defraud" Nielsen.

[¶14.]      Logs Unlimited first contests the circuit court's finding regarding fair market value. The valuation of assets is a question of fact. *See Endres v. Endres*, 532 N.W.2d 65, 68 (S.D. 1995). Findings of fact are reviewed under the clearly erroneous standard of review. *Nemec v. Goeman*, 2012 S.D. 14, ¶ 11, 810 N.W.2d 443, 446.

[¶15.]      Logs Unlimited argues that the fair market value of the assets was $150,440, not $259,215. However, Paul Thorstenson's trial testimony supported the circuit court's finding. He testified that, according to Logs Unlimited's 2011 tax return, the fair market value of the transferred assets was $259,215. He pointed out that, according to Absolute Log Homes' 2011 tax return, the fair market value of

the acquired assets was $231,849.94.[3] Thorstenson testified that there was no reason why Schramel would overstate the fair market value of the assets on those returns because Schramel was a Subchapter S taxpayer and a higher fair market value would increase his tax liability. He also testified that "[t]he numbers assigned seemed to make sense in relation to the age and the cost of the equipment."

[¶16.]    On the other hand, Casteel testified that he appraised Logs Unlimited's assets in May 2012 and determined that the fair market value (excluding buildings and improvements) was $150,440. Logs Unlimited argues that more weight should have been given to Casteel's appraisal because he personally inspected the assets and conducted research on their value. Logs Unlimited argues that no weight should have been given to Thorstenson's opinion because he was not a certified appraiser, he never reviewed Casteel's appraisal, and he used the values on the corporations' tax returns.

[¶17.]    We acknowledge the conflicting valuations, but "[i]t is up to the trier of fact to weigh the testimony, resolve conflicting testimony, and evaluate the credibility of witnesses." *Welch v. Auto. Co.*, 528 N.W.2d 406, 411 (S.D. 1995) (citation omitted); *see also Great W. Bank v. H & E Enters., LLP*, 2007 S.D. 38, ¶ 10, 731 N.W.2d 207, 209 ("As with all witnesses, it falls on the trier of fact to decide whether to believe all, part, or none of an expert's testimony." (citations omitted)). We also note that Schramel was under oath and subject to the penalty of perjury

---

3.    The difference between the value claimed on Logs Unlimited's tax return and the slightly lesser value claimed on Absolute Log Homes' tax return was due to third-party purchases of $28,000 in assets.

when reporting the valuations on the tax returns, and there was evidence that Schramel had no incentive to overstate the values on the tax returns. Therefore, the circuit court did not clearly err in finding that the fair market value of the assets was $259,215.

[¶18.]     Additionally, considering its valuation finding, the circuit court did not err in finding that Logs Unlimited did not receive consideration reasonably equivalent to the value of the transferred assets. "Whether the transfer is for reasonably equivalent value in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of facts." *Prairie Lakes Health Care Sys., Inc*, 1998 S.D. 99, ¶ 11, 583 N.W.2d at 412 (citation omitted) (internal quotation marks omitted). In this case, although the fair market value of the assets was $259,215, Logs Unlimited received only $183,500 in consideration.

[¶19.]     In determining reasonably equivalent value, "the proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors." *Glimcher Supermall Venture, LLC,* 2007 S.D. 98, ¶ 20, 739 N.W.2d at 823 (alteration in original) (quoting *In re Jeffrey Bigelow Design Grp., Inc.,* 956 F.2d 479, 484 (4th Cir. 1992)). In this case, if Logs Unlimited had received reasonably equivalent value for the transfer, the corporation would have had a sufficient estate to pay Nielsen's $35,374.95 judgment. But because Logs Unlimited did not receive reasonably equivalent value for the transfer, there were insufficient funds to pay the unsecured creditors, and Nielsen was worse off because of the transfer. The circuit court did not clearly err in finding that Logs Unlimited did not receive consideration reasonably equivalent to the fair market value of the assets.

[¶20.]     Logs Unlimited next challenges the circuit court's finding that Logs Unlimited was insolvent after the transfer. Logs Unlimited contends that no witness testified that it was "insolvent." It also contends that because the court stated that Logs Unlimited had equity of $114,000 remaining after the transfer, it could not have been insolvent as a matter of law.

[¶21.]     A debtor is "insolvent" if "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation[,]" and insolvency is presumed when the debtor "is generally not paying his debts as they become due[.]" SDCL 54-8A-2(a)-(b). Here, Schramel testified that after the transfer, Logs Unlimited did not have sufficient assets to pay the debt represented in Nielsen's judgment. Tenbroek confirmed that Logs Unlimited would not be solvent if Nielsen's judgment was considered. Although neither witness used the term "insolvent," their testimony established insolvency because, after the transfer, Logs Unlimited's debts exceeded the fair market value of its remaining assets and it was unable to pay its debts as they became due.

[¶22.]     Logs Unlimited, however, points out that the circuit court found that "[a]ccording to [Logs Unlimited's] tax returns for 2011, after the transfer of all its assets, [Logs Unlimited's] outstanding liabilities were paid and there was $114,000 left over." But that finding was based on the tax return, which valued the assets at $259,215. Therefore, Logs Unlimited had $114,000 in equity only if the full $259,215 fair market value of its assets had been received for the transfer, a fact that did not occur. Moreover, Logs Unlimited may not, as a matter of law, include the value of any of the transferred assets in determining insolvency. Under the Act,

the debtor's countable assets for purposes of determining insolvency "do not include property that has been transferred, concealed or removed with intent to hinder, delay or defraud creditors or that has been transferred in a manner making the transfer voidable[.]" SDCL 54-8A-2(d). In this case, the transferred assets may not be considered in determining insolvency, and even if they could, the actual consideration received for those assets was not sufficient to avoid insolvency. The circuit court did not err in finding that Logs Unlimited was insolvent.

[¶23.]    Logs Unlimited finally argues that there was no transfer of an "asset" within the meaning of the Act. Logs Unlimited points out that the transfer of an asset does not include the disposal of "[p]roperty to the extent it is encumbered by a valid lien[.]" SDCL 54-8A-1(2)(i). However, in this case, the secured loans held by First National Bank and Telco ($141,100) encumbered much less than the fair market value of the transferred property ($259,215). Because there was sufficient unencumbered property to satisfy the judgment, the transfer involved "assets" within the meaning of SDCL 54-8A-1(2)(i).[4]

[¶24.]    Considering the relevant factors, the transfer was fraudulent under SDCL 54-8A-4(a)(1). The assets were transferred to insiders. Through Logs Unlimited and Absolute Log Homes, Schramel retained possession and control of the assets after the transfer. Schramel admitted that he did not disclose the transfer to Nielsen. Nielsen obtained the judgment before the transfer. The

---

4.    Logs Unlimited also argues that "Nielsen provided no proof that Logs Unlimited had any equity, or excess value, in the assets he list[ed] in his complaint[.]" We disagree. Logs Unlimited's 2011 tax return disclosed that $114,000 in equity would have been available after payment of all liabilities if the assets had been transferred for fair market value.

consideration for the transfer was not reasonably equivalent to the fair market value of the assets, and Logs Unlimited was insolvent after the transfer. These facts show that Schramel and Logs Unlimited had the actual intent to hinder, delay, or defraud Nielsen. In fact, when asked in his debtor's examination whether the reason he ceased doing business as Logs Unlimited was to avoid paying Nielsen, Schramel answered, "that could be[.]" We affirm the circuit court's determination that Logs Unlimited fraudulently transferred its assets.[5]

[¶25.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON and WILBUR, Justices, concur.

---

5. Logs Unlimited's other arguments are without merit.