■ In the Matter of the Claim of BENJAMIN SCHEIBER, Respondent, v. I. SIMON & Co. et al., Appellants, and SPECIAL DISABILITY FUND, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. Appeal from a decision in a reopened case which held appellant carrier liable for claimant's medical expenses during a period of total disability occurring some years after the case was closed upon approval of a nonschedule adjustment; no compensation payments being awarded, apparently because the lump-sum settlement had not then been expended. The board found that "there was a change in claimant's condition and in the degree of disability   *   *   *   which was not contemplated at the time of the lump sum approval". (See Workmen's Compensation Law, § 15, subd. 5-b.) Appellants contend simply that "There is no substantial evidence of a change in condition". Claimant sustained back injuries in 1954. After receiving compensation for total disability for approximately three months and thereafter for partial disability for over six years (during this latter period claimant being steadily employed at reduced earnings), a lump-sum settlement was approved and the case closed, on the basis of a permanent partial disability which the board's examining physician characterized as "mild". Approximately two and one-half years later, upon a showing of total disability due to sciatic nerve pain and restriction of movement, the case was reopened and testimony taken, following which the award appealed from was made. The board found claimant totally disabled for a period of approximately six months, following which he returned to light work. Appellants question neither the finding of total disability nor that of causal relation implicit in the decision. On this record, we may not disturb the finding of a change, within the meaning of the statute authorizing award "upon proof that there has been a change   *   *   *   in the degree of disability of claimant not found in the medical evidence and, therefore, not contemplated at the time of the adjustment." (Workmen's Compensation Law, § 15, subd. 5-b.) Clearly, there was a change in "degree", when mild partial disability became total disability requiring hospitalization for traction and other procedures, followed by immobilization, with cast from shoulders to hips, for eight weeks following discharge from the hospital. Not disputing the fact of a change in disability status, appellants contended in their application for board review that "exacerbations and remissions are anticipated to an extent in a non-schedule adjustment" and in their brief upon this appeal quote trial counsel's argument that in a disc case "disability becomes total and partial, that it varies   *   *   *   that when [a claimant] makes this kind of a settlement in this type of case that he knows he has to handle the medical problems in the future and pay it himself." However persuasive appellants' arguments might otherwise be, they are unsupported by medical evidence that total disability in future was or should have been "contemplated at the time of the adjustment" (Workmen's Compensation Law, § 15, subd. 5-b) or were unsupported, at least, by any medical evidence that the board was bound to accept. Indeed, the one bit of

medical evidence to which appellants particularly point as confirming their theory of intermittent "flare-ups" is a physician's report, filed prior to the lump-sum settlement, which includes a prognosis of "Perm. *partial* disability" (emphasis supplied) which is consistent with the theory upon which the award was predicated and, indeed, supports it. Parallel in respect of the pertinent issues was the factual situation in *Matter of Goldbard* v. *Dixie Lake Hotel & Country Club* (11 A D 2d 858) in which we indicated that award might properly be made for a change in degree of disability due to psychoneurosis from partial to total. Decision affirmed, with costs to the Workmen's Compensation Board. Herlihy, Taylor and Aulisi, JJ., concur; Reynolds, J., dissents and votes to reverse, in the following memorandum: As noted by the majority, subdivision 5-b of section 15 provides that where a lump-sum settlement has been agreed to, the case shall be regarded as closed "unless the board find upon proof that there has been a change in condition or in the degree of disability of claimant not found in the medical evidence and, therefore, not contemplated at the time of the adjustment." My sole area of disagreement with the majority is on the question of whether there is substantial evidence to support the board's finding that the new condition and resulting temporary change in disability status was not contemplated at the time the lump-sum settlement was arranged. Therefore, to put this case in proper perspective we must first fully review claimant's medical history beginning at a point just prior to the settlement of October, 1960. The medical reports in 1959 just prior to the lump-sum settlement indicate clearly a permanent partial disability. For example Dr. Schoenfeld states that claimant was suffering from a post laminectomy syndrome; that on occasions he was subjected to acute episodes of pain; but that for the most part his condition was satisfactory. Similarly in a 1959 report, Dr. Bein noted that claimant complained of intermittent low back discomfort and that "In view of the persistent complaints and the history of the post laminectomy condition, the claimant has a mild permanent partial disability." Further Dr. Greenhall, in a 1960 report advised a lump-sum settlement as being "therapeutically advisable" since claimant "has reached the maximum benefit of medical treatment." Only Dr. Greenhall, who seems to have implied that claimant was in a relatively improved condition, differed from the consensus of the medical opinions that at the time of the settlement claimant had a continuing problem. Then on February 11, 1963, claimant submitted an application for reopening on the ground of change in condition accompanied by a medical report in support by Dr. Feldman who indicated claimant had sciatic pain and pain in the sacroiliac. In a report dated February 21, 1963 Dr. Kenin reported that claimant had shoved a man in an altercation 10 weeks before and had thereafter had some trouble with his right arm; that nine weeks before he developed pain in his right thigh and that on January 16, 1963 when he got up to shave he experienced pain which put him in bed for three days; that thereafter his pain continued. Dr. Kenin recommended claimant go to a hospital which he did. He was there placed in traction. He remained there 12 days. There was no report of any physiological or structural change in the muscles, bones or vertebrae in claimant's back except that Dr. Balensweig in a 1964 report stated "This man has disc degenerative disease of the lower 3 lumbar disc spaces." But Dr. Schoenfeld testified in 1959 that claimant had "a chronic back condition, originating or starting at the time he was in the army, progressive in nature". At the 1964 hearings following the reopening where change of condition was the subject matter, Dr. Kenin testified that claimant's episode which prompted the reopening, when he went to the hospital in 1963, produced a total disability. But, this was only temporary since he

testified that in August of 1963 the disability was back to being partial. When given a 1959 medical report by another physician which was rendered in 1959, Dr. Kenin stated that his own findings in 1963 " are very close, very parallel." The changes testified to by Dr. Feldman in 1964 were entirely symptomatic, i.e., claimant's back restrictions had changed from moderate to severe. Dr. Balensweig testified that claimant's condition was continually subject to remissions and exacerbations. I can find nothing in this medical evidence which would indicate other than that any change in claimant's condition was due solely to a symptomatic change in condition, i.e., an exacerbation, and that such a change was clearly contemplated at the time of settlement (*Matter of Primus* v. *Continental Tool,* 7 A D 2d 178). The mere symptomatic worsening of a condition existing and evaluated at the time of the settlement (cf. *Matter of Lawton* v. *General Motor Corps.,* 13 A D 2d 587, 607, mot. for lv. to app. den. 9 N Y 2d 613) cannot be said not to have been contemplated unless there is evidence of a basic change in the degree of disability (*Matter of Goldbard* v. *Dixie Lake Hotel,* 11 A D 2d 858). Of course, here the claimant's disability did during a period in 1963 change from permanent partial to temporary total but it subsequently returned to permanent partial, a fact the board neglected to mention. I do not believe such an easily foreseeable temporary change due to factors evaluated at the time of settlement is the sort of change in degree contemplated by subdivision 5-b of section 15. In my opinion there must either be a permanent change in degree (*Matter of Goldbard* v. *Dixie Lake Hotel, supra*), a temporary change in degree not previously contemplated or, though no actual change in degree, a condition discovered which was not previously known and hence could not possibly have been contemplated (*Matter of Lawton* v. *General Motors Corp., supra*). None of these factors are here present and thus under *Matter of Primus* v. *Continental Tool (supra)* the decision should be reversed. To hold otherwise would seriously jeopardize all future settlement arrangements. I cannot contemplate that any carrier would in the future choose to pay $4,750 in settlement of a back case if said amount does not cover periods of exacerbation such as are here involved.