**Robert G. MILLS, Claimant and Appellee,**

v.

**SPINK ELECTRIC COOPERATIVE, Employer and Appellant,**

**and**

**Federated Rural Electric Insurance Corporation, Insurer and Appellant.**

No. 16356.

Supreme Court of South Dakota.

Argued Feb. 16, 1989.

Decided June 14, 1989.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for claimant and appellee.

William Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for employer, insurer and appellants.

MORGAN, Justice.

This is an administrative appeal by Spink County Electric Cooperative (Employer) and Federated Rural Electric Insurance Corporation (Insurer), collectively referred to herein as Companies, from a decision of the South Dakota Department of Labor (Department), reopening an approved worker's compensation settlement and awarding Robert Mills (Mills) additional medical benefits. We affirm.

On June 21, 1974, Mills accidently suffered a severe electrical shock while working within the scope of his employment. His electrical burns necessitated amputation of his right arm and a below-the-knee amputation of his left leg. In 1976, Mills signed a settlement agreement with Insurer that was later approved by Department. The agreement provided in pertinent part that Insurer would pay future medical expenses only until January 1, 1978. The agreement included a release covering unknown and unanticipated injuries, damages and disability resulting from the electrocution.

Mills testified that only one future surgery was discussed prior to the execution of the settlement agreement in 1976. Two medical reports, attached to the agreement, made no reference to the possibility that extensive future treatment would be necessary.

The record reflects that Mills' condition has deteriorated steadily since 1978 due to the continued shrinking and atrophy of his leg. This change in condition has necessitated numerous surgeries and refitting and replacement of prostheses. Mills obtained new fittings and new prosthetic devices for his leg approximately once each year from 1978 to 1986.

Certified Prosthetist Jack Daughters testified that the condition of Mills' leg had atrophied and changed so much and so rapidly over the period of ten to twelve years since he began treating him that new artificial legs were required more frequently than for the normal amputee. Further, he stated that it was abnormal for a mature amputation to continue to atrophy the way Mills' had. In this regard, he described Mills as a unique amputee.

In 1983, Mills filed a petition with Department requesting that Companies be liable for "unanticipated" medical expenses incurred and for all future medical expenses. After a hearing in 1986, Department concluded that Mills had demonstrated a "change of condition" which permitted the reopening and modification of the 1976 settlement agreement pursuant to SDCL 62–7–33. The trial court affirmed.

On appeal, Companies raise the following issues:

1) Whether Mills waived his statutory right to request review of medical payments;

2) Whether Department has jurisdiction to reopen the settlement agreement; and

3) Whether there existed a change in Mills' condition justifying an award of medical benefits.

Our standard of review in this case is governed by SDCL 1–26–36. This requires us to "give great weight to the findings made and inferences drawn by [Department] on questions of fact." *Id.; Finck v. Northwest School Dist. No. 52–3*, 417 N.W. 2d 875 (S.D.1988). Further, we review the record in the same light as does the trial

court and determine whether or not Department's decision was clearly erroneous in light of all the evidence. *In re Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D. 1986).

 Companies first contend that Mills' voluntary signature on the settlement agreement is equivalent to a complete and irrevocable waiver of his private statutory right to reopen his claim pursuant to SDCL 62–7–33. Companies emphasize that Mills voluntarily and intelligently entered into the negotiated settlement after expressly considering that his medical condition was uncertain. They point to language in the agreement which reads: "It is acknowledged that future medical treatment is likely[.]" Therefore, they say, he has waived his right to any future medical benefits.

We are not persuaded. Ordinarily, releases and settlement agreements obtained without coercion, and with consideration, are valid and binding. However, under certain conditions, an exception to this rule exists when worker's compensation rights are involved. In *Vodopich v. Trojan Mining Co.*, 43 S.D. 540, 180 N.W. 965 (1921), where a similar argument was raised, this court relied on what is now SDCL 62–3–18 [1], to deny a similar claim of waiver. Reviewing that statute, in conjunction with what is now SDCL 62–7–33 [2], we said:

> We are of the opinion that it is the plain intent of the Workmen's Compensation law that, while fraud or misrepresentation in obtaining the release would be a ground for setting it aside, yet an injured employee is not required to establish the fact that an agreement for release of further liability was entered into by reason of the fraud or misrepresentation of the employer before he can have the cause reopened. Where such an

agreement is signed and approved by the Industrial Commissioner under [SDCL 62–7–33], equitable grounds for setting aside the release must be established before the cause can be reopened. (Citation omitted.)

43 S.D. at 545, 180 N.W. at 966.

In *Novak v. C.J. Grossenburg and Son*, 89 S.D. 308, 232 N.W.2d 463 (1975), we reviewed the *Vodopich* decision and subsequent decisions that considerably restricted it. We overruled *Chittenden v. Jarvis*, 68 S.D. 5, 297 N.W. 787 (1941), wherein a final release, approved and filed with the Commissioner was held not to be subject to review because it was filed with the Commissioner, whereas the release in *Vodopich* was not. In *Novak*, we held:

> We would hold that since there is no statutory mandate against setting aside a release where consequences of an injury were not discoverable until sometime in the future there can be a review by the Commissioner of the award in view of the newly discoverable disability.

89 S.D. at 316, 232 N.W.2d at 467.

The claimant in *Novak* had suffered an injury to his back, which had resulted in some disability. After he had signed a full receipt and release of the insurer and employer, he experienced more difficulty, resulting in surgery, when a laminectomy and diskectomy were done. We held the release could be reopened because it did not provide for permanent, partial disability. In this case, Mills is not seeking any additional disability compensation, only medical expenses. We believe that the same rationale applies here.

Both Department and the trial court determined that the change in Mills' medical condition could not have been anticipated

1. SDCL 62–3–18 provides:
 No contract or agreement, express or implied, no rule, regulation, or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title except as herein provided.

2. SDCL 62–7–33, as amended by the 1980 Sess.L. ch. 365 § 5, reads:
 "Any payment, including medical payments under § 62–4–1, made or to be made under this title may be reviewed by the department pursuant to § 62–7–12 at the written request of the employer or of the employee and on such review it payments may be ended, diminished, or increased or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action." (Underscoring reflects additions to the statute.)

or foreseen at the time he executed the settlement. The record demonstrates that this finding is not clearly erroneous. Because he could not have anticipated such extensive future medical expenses, any alleged waiver is ineffective. Therefore, *Novak* expressly permits the reopening and modification of Mills' claims pursuant to SDCL 62-7-33.

■ Companies next contend that SDCL 62-7-33 in its present form may not be applied retroactively to set aside the settlement and release executed in 1976. Mills submits that proper application of the original statute or its present version leads to the same results reached by Department and the trial court. We agree with Mills' interpretation of the 1980 amendment as set out in footnote 2, *supra.*

It is long-standing public policy that worker's compensation statutes be liberally construed in favor of injured employees. *S.D. Med. Service v. Minn. Mut. Fire & Cas. Co.,* 303 N.W.2d 358 (S.D.1981). Worker's compensation statutes are "remedial, and should be liberally construed to effectuate [their] purpose." *Moody v. L.W. Tyler, Custom Combiners,* 297 N.W. 2d 179, 180 (S.D.1980). Further, in *Stowsand v. Jack Rabbit Lines,* 75 S.D. 11, 58 N.W.2d 298 (1953), this court recognized that SDCL 62-7-33 permits Department to review and award worker's compensation claims. Reopening is warranted by the unique facts in the case before us. This is exactly the type of situation SDCL 62-7-33 was meant to address. Our holding in this case is consistent with the spirit of the decisions cited above and our policy of liberal interpretation of worker's compensation statutes.

■ As their last issue, Companies contend that Mills has, at most, shown a change in prognosis and not a change in condition. They argue that in 1976, Mills was a double amputee suffering from the problems of prostheses fittings. He is in the same condition today.

Companies take a very restrictive interpretation of the term "change in condition." We adopt a broader interpretation:

The 'change in condition' which justifies reopening and modification is ordinarily a change, for better or worse in claimant's physical condition. This change may take such forms as progression, deterioration, or aggravation of the compensable condition, achievement of disabling character by a previously symptomatic complaint, appearance of new and more serious features, such as discovery of a disc herniation in a back case, failure to recover within the time originally predicted, and superimposition or worsening of a neurotic condition.

3 Larson, The Law of Workmen's Compensation, § 81.31(a) (1988).

There is substantial evidence in the record to support Department's fact finding that Mills' physical condition deteriorated, causing him to require far more medical attention than anticipated at the time the settlement was executed. This meets the standard we have expressly adopted herein. Therefore, we do not find the trial court's decision clearly erroneous.

We affirm the trial court.

All the Justices concur.