1998 SD 8

**Jeffrey SOPKO, Employee and Appellee,**

v.

**C & R TRANSFER COMPANY, INC.**
**Employer and Appellant,**

and

**Home Insurance Company,**
**Insurer and Appellant.**

No. 20012.

Supreme Court of South Dakota.

Argued Sept. 10, 1997.

Decided Jan. 28, 1998.

N. Dean Nasser, Jr., James R. Even of Nasser Law Offices, Sioux Falls, for employee and appellee.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellants.

KONENKAMP, Justice.

[¶ 1.] Following his 1974 injury, claimant suffered intermittent seizures, but his doctor was unsure of their origin. Consequently, he settled his workers' compensation case with an agreement approved by the Department of Labor, specifically conceding he sustained no permanent disabling injury. In 1994, he petitioned to reopen his case after surgery revealed his seizures resulted from the original injury. Is he entitled to reopen despite having waived all future claims arising from his accident? Because our workers' compensation laws are designed to ensure injured workers receive their statutory benefits, we conclude settlement agreements cannot foreclose reopening in the event of a change in condition resulting from an undiscovered injury or an unforeseen consequence of a known injury. We affirm the decision to reopen.

### Facts

[¶ 2.] On August 25, 1974, while employed by C & R Transfer Company, Inc., Jeffrey Sopko was struck on the head by a bursting split-rim from a truck tire. The explosion perforated both his tympanic membranes and caused severe cranial injuries, requiring restorative treatment. He also experienced seizures. To control them, his doctors prescribed Dilantin, which he was to take "indefinitely." The insurer paid Sopko's medical expenses and temporary total disability benefits for six months while he was unemployed. The final medical bills for the original injury were paid on December 2, 1976.

[¶ 3.] Although he was unable to return to C & R because his position had been filled, Sopko worked for other employers for the next few years. In April 1979, he was diagnosed with bacterial spinal meningitis, resulting from cerebrospinal fluid leakage caused by the cranial fractures he incurred in the 1974 injury. In the next few months, he underwent a series of medical procedures to repair the leak. Throughout this time he

continued to work, missing only a few days. Sopko's seizures persisted intermittently through 1980. His treating physician, Dr. Harlan Payne, concluded "it is unclear whether the seizures resulted from that accident or actually antedated it ... I could not really say what the exact etiology of his seizures may have been." By April 1981, however, his seizures had ended.

[¶ 4.] Sopko petitioned the Department of Labor for additional workers' compensation benefits, including $13,600 in medical bills he incurred from the meningitis episode. The insurer initially denied the claim on the ground the statute of limitations had expired. After hearings commenced, but before a final decision, the parties signed an agreement dated August 18, 1981, compromising all claims. The Stipulation for Settlement, which is the focal point of this appeal, stated in part:

> According to all of the medical documentation submitted in connection with claimant's petition, none of plaintiff's physicians could assign a percentage of permanent disability to claimant's skull or to claimant's entire person as a result of the injury. Therefore, it is hereby stipulated and agreed that claimant, for purposes of this settlement, did not sustain a permanent disabling injury as the result of the accident which occurred on employer's premises in August, 1974. The Worker's Compensation Commission should not be entitled to enter a finding of permanent disability or to reserve the question pending future problems claimant may sustain. Claimant hereby waives any right he may have to a stay of further proceedings pending the need for possible future treatment. Claimant hereby waives and releases all claim [sic] he may have against defendants for any additional medical assistance or any additional compensation.
>
> \*    \*    \*    \*    \*    \*
>
> Claimant hereby releases defendants and waives any claim for payment for any permanent disabling injury, permanent physical disability, or payment for any medical payments that may be incurred in the future due to the skull and ear injuries sus-

tained by claimant in said industrial accident. This waiver is given based on the fact heretofore outlined in this petition together with the fact that a significant question about the timeliness of claimant's claim exists. Specifically, claimant understands that defendants have a valid defense based on the statute of limitation, but defendants have waived that claim to the extent that they have agreed to compromise this claim.

\*    \*    \*    \*    \*    \*

> Upon approval of this compromise agreement by the South Dakota Worker's Compensation Commission, or by its hearing examiner, and payment in accordance with the provisions hereof, said claimant releases and forever discharges his employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability of said employer and said insurance carrier, and each of them, to the defendants, heirs, executors, administrators, or assigns of said claimant.

The Department formally approved the settlement on August 19, 1981.

[¶ 5.] In 1984, his seizures began to steadily recur. To relieve the problem, in 1992, Dr. John R. Gates of Minneapolis, Minnesota, performed a right temporal lobectomy. He found an accumulation of scar tissue originating from earlier surgery necessitated by the 1974 injury. In Dr. Gates' opinion, the seizures beginning in 1984 were directly attributable to this scar tissue. He also concluded the seizures constituted a change in Sopko's condition requiring further medical treatment. On March 2, 1994, Sopko again petitioned the Department for compensation. The parties agreed to bifurcate the case so that C & R's statute of limitations and release defenses could be considered first. After a hearing, the Department concluded the 1981 agreement should be set aside and the case reopened because Sopko demonstrated a substantial, and unforeseen, post-release, physical change of condition. In his findings, Director Marsh wrote, "the underlying claim from 1974 has always been

compensable and the Department retains continuing jurisdiction over compensable claims pursuant to SDCL 62–7–33 when there has been a substantial, material worsening of the physical condition of the employee." To the extent the employer urged the settlement agreement foreclosed any reopening, Marsh declared it "invalid as a matter of law." On appeal, pursuant to SDCL 62–7–19, the circuit court affirmed, concluding that although there were facts to the contrary, "substantial evidence" supported the Department's findings.[1] In this appeal, C & R offers essentially one question: Is Sopko's current petition barred by the 1981 settlement agreement?

## Standard of Review

▪▪ [¶ 6.] Our standard of review, delineated in SDCL 1–26–36, requires us to give great weight to the findings and inferences made by the Department on factual questions. *Helms v. Lynn's, Inc.*, 1996 SD 8, ¶¶ 9–10, 542 N.W.2d 764, 766; *Finck v. Northwest Sch. Dist. No. 52–3*, 417 N.W.2d 875, 878 (S.D.1988). We examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence. *In Matter of Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415 (S.D.1986). If after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we reverse. *Spitzack v. Berg Corp.*, 532 N.W.2d 72, 75 (S.D.1995)(citing *Day v. John Morrell & Co.*, 490 N.W.2d 720, 723 (S.D.1992)); *see also United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)(origin of definition). Questions of law, of course, are fully reviewable. *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992); *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991).

▪▪ [¶ 7.] Relying on our precedent, the circuit court partially applied a substantial evidence analysis to review the Department's findings. To allay future confusion over the proper standard of review in administrative appeals, we will no longer employ "substantial evidence" terminology. In the past, we have regularly combined clearly erroneous and substantial evidence principles, but the latter is not the proper test. SDCL 1–26–36 was amended effective July 1, 1978, changing the standard of review for sufficiency of the evidence from "unsupported by substantial evidence on the whole record" to "clearly erroneous." (For reasons unknown the definition remains unrepealed. SDCL 1–26–1(9)). The difference between the two standards should not be obscured: It is simply inaccurate to conclude, findings supported by substantial evidence are not clearly erroneous.[2] 1 S. Childress & M. Davis, *Federal*

---

1. The circuit court relied upon *Bearshield v. City of Gregory*, 278 N.W.2d 164 (S.D.1979), to dispose of the statute of limitations issue:

   In cases such as this, where the existence and extent of injury is unknown at the time of the accident, it would be unfair to begin the running of the statute of limitations at the time of the accident. Accordingly, ... the statute of limitations runs from the time it became apparent that a compensable injury has been sustained. This rule applies where it later becomes apparent that a much more serious injury resulted from the accident than was at first supposed, and the plaintiff had no knowledge that such was the situation....

   *Id.* at 165. On appeal before this Court, C & R did not brief the statute of limitations question. Accordingly, under the authority of SDCL 15–26A–60(6) "such a failure constitutes a waiver of that issue." *Tjeerdsma v. Global Steel Bldgs., Inc.*, 466 N.W.2d 643, 644 n. 2 (S.D.1991).

2. As Justice Wollman recognized, "The question of the applicable scope of review is of more than academic interest, for the 'clearly erroneous'

standard of review gives a reviewing court greater latitude in reviewing a lower court's findings than does the 'substantial evidence' test." *Huffman v. Board of Educ.*, 265 N.W.2d 262, 263 (S.D.1978)(citing K. Davis, *Administrative Law Treatise* § 29.02 (1958)). On the other hand, Professor Schwartz believes that there is "not much practical difference in review" between the clearly erroneous and substantial evidence tests, except at the "level of legalistic logomachy." B. Schwartz, *Administrative Law* § 10.39, at 712 (3d ed 1991)(quoting 1 R. Pound, *Jurisprudence*, at 542–43 (1959)). Much confusion arises when courts attempt to define "clearly erroneous" in "substantial evidence" language. "[A] finding is 'clearly erroneous' if it is without substantial evidentiary support.... We do not, however, accept the converse of that proposition. In our view, 'substantial evidence' and 'clearly erroneous' are not synonymous; although supported by substantial evidence a finding may be set aside if it is found to be clearly erroneous." *Case v. Morrisette*, 475 F.2d 1300, 1306, 1307 n. 35 (D.C.Cir.1973).

*Standards of Review* § 2.07 at 2–44 (2d ed. 1992)(citing cases from every federal circuit). Even when substantial evidence supports a finding, reviewing courts must consider the evidence as a whole and set it aside if they are definitely and firmly convinced a mistake has been made. *See W.R.B. Corp. v. Geer,* 313 F.2d 750, 753, (5th Cir.1963), *cert. denied* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964). Furthermore, "[u]se of substantial evidence language, even in a technically correct comparison, is troublesome not only as a vestige of the rejected jury test, but also as a potential infringement on separate standards of review in other areas, such as administrative appeals." Childress & Davis, *supra,* § 2.07, at 2–47. Nonetheless, no remand is required here as we review the Department's fact findings the same as the circuit court.

## Analysis and Decision

■ [¶ 8.] We begin with our accustomed understanding that workers' compensation statutes should be construed liberally in favor of injured employees. *Mills v. Spink Elec. Co-op.,* 442 N.W.2d 243, 246 (S.D.1989); *Wilcox v. City of Winner,* 446 N.W.2d 772, 775 (S.D.1989). The overall purpose of workers' compensation is to provide for employees who have lost their ability to earn because of an employment related accident, casualty, or disease. *Caldwell,* 489 N.W.2d at 362.

### 1. Effect of Agreement Reciting No Permanent Injury Occurred

■ [¶ 9.] Ordinarily, workers' compensation awards whether by agreement or adjudication are final unless the Department reserves jurisdiction. *Call v. Benevolent. & Protec. Order of Elks,* 307 N.W.2d 138, 139 (S.D.1981); *Stowsand v. Jack Rabbit Lines,* 75 S.D. 11, 13, 58 N.W.2d 298, 299 (1953);

In most federal agency appeals, the preferred standard is the substantial evidence test. Martha S. Davis, *A Basic Guide to Standards of Judicial Review,* 33 S.D.L.Rev. 469, 476 (1988)("Fact finding of juries and administrative agencies receive reasonableness or substantial evidence review, not clearly erroneous review."). *See, e.g.,* 5 U.S.C. § 706(2)(E). "On the deference spectrum, clearly erroneous fits somewhere between de novo (no deference) review and substantial evidence (considerable deference) review." 1 S. Childress & M. Davis, *Federal Standards of Review* § 15.03 at 15–17 (2d ed. 1992).

*Salmon v. Denhart Elevators,* 72 S.D. 110, 114, 30 N.W.2d 644, 646 (1948). Compromise agreements permitted under SDCL 62–7–5 have the same force and effect as adjudicated awards:

> If the employer and employee reach an agreement in regard to the compensation under this title, a memorandum of the agreement shall be filed with the department by the employer or employee. Unless the department within twenty days notifies the employer and employee of its disapproval of the agreement by letter sent to their addresses as given in the memorandum filed, the agreement shall stand as approved and is *enforceable for all purposes under the provisions of this title.*

(emphasis added). C & R asserts the release language in the 1981 settlement agreement deprived the Department of jurisdiction to adjudicate any future requests to end, increase, or diminish the previous workers' compensation award. Although we have never addressed terminology similar to that in the present agreement, we have recognized in various circumstances an abiding exception to the general rule of finality. *Cf. Larsen v. Sioux Falls Sch. Dist. No. 49–5,* 509 N.W.2d 703, 705 (S.D.1993); *Whitney v. AGSCO Dakota,* 453 N.W.2d 847, 850 (S.D.1990); *Mills,* 442 N.W.2d at 245.

[¶ 10.] Unlike the common law precepts on the finality of releases, the provisions governing such documents in workers' compensation cases are more forbearing.[3] As early as 1921 this Court held that besides fraud and misrepresentation, "equitable grounds" may be sufficient to set aside a release. *Vodopich v. Trojan Mining Co.,* 43 S.D. 540, 545, 180 N.W. 965, 966 (1921). In *Novak v. C.J.*

3. Compare the common law rule as exemplified in *Petersen v. Kemper,* 70 S.D. 427, 432, 18 N.W.2d 294, 297 (1945)(quoting *Richardson v. Chicago, M. & St. P. Ry. Co.,* 157 Minn. 474, 196 N.W. 643, 644 (1924)(stating "The parties are presumed to have had in mind the uncertainty as to the after effects of the injuries, and to have elected to make a final settlement which should be binding and conclusive whether such after effects should prove to be either more or less serious than anticipated[.]")).

*Grossenburg and Son,* 89 S.D. 308, 232 N.W.2d 463 (1975), we concluded a release may be set aside when the consequences of an injury were newly discovered after the release was signed. *Novak* specifically overruled *Chittenden v. Jarvis,* 68 SD 5, 297 N.W.2d 787 (1941), which had held that a disability discovered after a workers' compensation award will not permit reopening even if there is a change in condition. Again in *Mills,* 442 N.W.2d at 245–46, though the settlement agreement covered "unknown and unanticipated injuries, damages, and disability" we declared the waiver ineffective and allowed reopening because the claimant's "medical condition could not have been anticipated or foreseen at the time he executed the settlement." Indeed, despite the existence of a release, *Novak* and *Mills* turned on the issue of foreseeability: neither claimant foresaw the consequences of his injuries and thus reopening was permitted. On the other hand, in *Larsen,* 509 N.W.2d at 709, reopening was denied not only because the settlement agreement was deemed final, but also because the claimant sustained "no change of physical condition since settlement." Likewise with *Whitney,* 453 N.W.2d at 851, recovery of additional benefits was precluded after an approved settlement agreement because the claimant failed to show a change in physical condition.

■ [¶ 11.] South Dakota's statutory exception to the finality rule is found in SDCL 62–7–33:

Any payment, including medical payments under 62–4–1, made or to be made under this title may be reviewed by the department of labor pursuant to 62–7–12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that *a change in the condition of the employee warrants such action.*

---

4. An earlier version of this statute provided in part: "Any payment *to be made* under this title...." SDC 64.0609 (emphasis added). For this reason, in *Stender v. City of Miller,* 82 S.D. 334, 145 N.W.2d 913 (1966), this Court concluded that the "statute was designed for situations

(emphasis added). Under this statute, the Department has continuing jurisdiction to review "any payment" when there has been a physical change in the employee's condition from that of the last award.[4] *See Middleton v. City of Watertown,* 70 S.D. 158, 16 N.W.2d 39 (1944) which interpreted the predecessor statute:

By the provisions of this statute the filing of the agreement conferred continuing jurisdiction upon the Industrial Commissioner for the determination of all questions of future liability due to the original injury and based on changes in the condition of the employee occurring subsequent to the original award, notwithstanding the statute of limitations....

*Id.* 70 S.D. 158, 159, 16 N.W.2d 39, 41. Thereupon, the Court concluded:

At the time the agreement was made the condition of permanent disability was not ascertainable. This is shown by the fact that two operations were performed on the left knee after the date of the agreement, for the purpose of restoring the full use of the leg. The record shows that after the operations and at the time of the hearing on this claim the injury to the left knee had become permanent....

*Id.*

■ [¶ 12.] Not intending to diminish the finality of workers' compensation settlements and awards, the Legislature imposed the requirement of showing a change in the employee's condition:

The "change in condition" which justifies reopening and modification is ordinarily a change, for better or worse in the claimant's physical condition. This change may take such forms as progression, deterioration, or aggravation of the compensable condition, achievement of disabling character by a previously symptomatic complaint, appearance of new and more serious features, such as discovery of a disc

---

involving installment payments to injured employees. It contemplates the existence of continuing payments." *Id.* at 915. With the addition of the word "made" to the statute, this interpretation is no longer wholly accurate.

herniation in a back case, failure to recover within the time originally predicted, and superimposition or worsening of a neurotic condition. 3 Larson, *The Law of Workmen's Compensation,* § 81.31(a) (1988).

*Mills,* 442 N.W.2d at 246. Only after a party asserting a "change in condition" has met the required burden may the Department reopen a previous award. *See generally Whitney,* 453 N.W.2d at 850; SDCL 62–7–33. Where a claimant, however, fails to show a change in condition, a final compensation award is res judicata with regard to the condition of the injured employee at the time the award was entered. *Call,* 307 N.W.2d at 139; *Stowsand,* 75 S.D. at 14, 58 N.W.2d at 299.

█ [¶ 13.] Agreements purporting to forego benefits for undiscovered injuries are ineffective.

> *No agreement,* express or implied, ... shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title except as herein provided.

SDCL 62–3–18 (emphasis added). Acknowledging this statute is "very broad in its terms and effects," in *Caldwell,* 489 N.W.2d at 360, we suggested its purpose was

> to ensure that an employer, does not, because of ruse, artifice, inequality of bargaining power, or by other means, cheat any employee out of either coverage or those benefits an employee would be entitled to under our worker's [sic] compensation act.

Yet the core intent underlying this provision is to ensure injured employees obtain their statutory benefits. *See Sugrue v. Champion,*

128 Conn. 574, 24 A.2d 890, 893 (1942)(interpreting nearly identical language to hold its purpose is to protect employees, "even to the extent of rendering nugatory" their own agreements when they fail to provide the compensation the law allows.)[5] Analyzing SDCL 62–7–33 and 62–3–18 together, we are persuaded our Legislature intended to disallow agreements foreclosing statutory rights to reopen in the event of changes in condition resulting from undiscovered or unforeseen consequences.

█ [¶ 14.] Other courts have decided similarly when examining their own workers' compensation statutes. "[S]ettlement agreements remain subject to the reopening provisions of the statute in the same manner as claims resolved by the granting of an award, and ... parties may not by private agreement modify this strong legislative policy." *Padilla v. Indus. Com'n of Colorado,* 696 P.2d 273, 276 (Colo.1985)(full release with waiver of right to reopen unenforceable); *Scheiber v. I. Simon & Co.,* 25 A.D.2d 588, 267 N.Y.S.2d 44 (1966)(change in condition and degree of disability not contemplated at the time of lump sum approval). *Padilla* cites our holding in *Novak* in illustration of this rule. *See also Swift & Co. v. Blades,* 502 S.W.2d 513, 515 (Ky.1973); *Utah Fuel Co. v. Industrial Comm'n. of Utah,* 108 Utah 346, 159 P.2d 877, 879 (1945). *But see Greenwade v. State Acc. Ins. Fund,* 41 Or.App. 697, 598 P.2d 1265, 1267 (1979); *City of Anaheim v. Workers' Comp.App. Bd.,* 128 Cal.App.3d 200, 180 Cal.Rptr. 132, 134 (1982). Workers might legitimately waive future claims for known conditions, but in South Dakota no release may foreclose reopening in cases of undiscovered or unforeseen injuries.[6] Next,

---

5. *But see Herring v. Welltech, Inc.,* 715 P.2d 553 (Wyo.1986)(interpreting an equivalent statute: "No contract, rule, regulation or device shall operate to relieve an employer from any liability created by this act ... except as otherwise provided by this act."). Finding the approved release to be final, the court interpreted this statute to disallow reopening because the "stipulation and order did not operate to relieve the employer from liability under the act; rather, the employer accepted liability for appellant's workers' compensation claims and the parties agreed to an amount thereby settling the dispute pending before the court." *Id.* at 556 n. 4.

6. Reopening a settled workers' compensation case can create unique difficulties. In this instance, the parties' agreement acknowledged that a "significant question about the timeliness of claimant's claim exists" and that the employer had "a valid defense based on the statute of limitation, but ... waived that claim to the extent that they have agreed to compromise...." In fairness, in reopened cases employers should be able to revive any defenses they could have originally interposed. However, here, the Department stated "[w]hether a valid statute of limitations defense existed [before the 1981 agreement] is of no consequence to the 1992 claim, and if it is, the defense, being based on the

if the seizures Sopko incurred beginning in 1984 were work related as the Department concluded, were they an undiscovered or unforeseen consequence of his original injury?

### 2. Undiscovered or Unanticipated Consequence

[¶ 15.] When an injured worker seeks to reopen a settlement which includes a waiver of future rights, the focus is on whether the asserted change in condition derives from an injury unknown at the time of the settlement or from a known injury with its disabling character unknown. *Novak, Mills, supra.* C & R contends imminent problems resulting from Sopko's seizure activity were "clearly contemplated, anticipated, and foreseeable at the time of the settlement agreement." The Department, however, concluded Sopko had not foreseen a permanent disability at the time of the settlement in August, 1981: "the first time the Employee discovered that the seizure activity ... might be related to the 1974 accident was when Dr. Gates rendered his opinion, following the right temporal lobectomy, that he believed the seizure activity was related to the scar tissue he had observed during the lobectomy...."

[¶ 16.] The Department also found that Sopko had met his burden of showing a change in condition. Unanticipated development of scar tissue had worsened Sopko's condition giving the Department jurisdiction to reopen the initial claim. Additionally, and in line with this Court's reasoning in *Mills,* "the resulting consequences of [the] initial injury were not discoverable until sometime in the future." 442 N.W.2d at 246. We cannot say these findings were clearly erroneous. As the wording of the release states, even Sopko's physicians were unable to assign a percentage of permanent disability resulting from the initial injury. The consequences of Sopko's injury were not discoverable or anticipated until sometime in the future, therefore *Novak* and *Mills* expressly permit reopening and modification pursuant to SDCL 62–7–33.[7]

[¶ 17.] When deposed, Sopko's attorney at the time of the 1981 settlement conceded he could not have proved the seizures were related to the 1974 injury. Thus C & R contends the Department was without jurisdiction to hear the petition to reopen as the seizure condition was unrelated to the 1974 injury and, as such, a noncompensable condition. First, it has never been disputed that the 1974 injury was compensable. The only question was the extent of injury and disability. Second, nowhere in the settlement agreement does it state the seizures were unrelated to the work accident. The settlement agreement speaks for itself. *Quick v. Bakke, Kopp, Ballou, & McFarlin, Inc.,* 380 N.W.2d 364, 366 (S.D.1986)(Parol evidence is not admissible where the agreement to be interpreted is integrated, unambiguous and the parties' intent clear). We are not concerned with discovering latent understandings, if to do so would controvert the terms of an unambiguous writing. *Lee v. Rapid City Area Sch. Dist. No. 51–4,* 526 N.W.2d 738, 740 (S.D.1995); SDCL 53–8–5.

[¶ 18.] Citing Professor Larson's treatise, C & R argues that had the parties proceeded with a full adjudication of the facts instead of settling the claim in 1981, there would have been a formal determination by the Department that Sopko's seizure condition was not compensable. Perhaps, but we cannot decide this matter based on what might have happened. The cited portion from Larson states:

> If the original award held that there was no connection between the accident and

---

effect of the agreement should be relinquished based on [Sopko's] physical change of condition." We make no comment on this reasoning as the issue was waived on appeal. *See supra* note 2.

7. C & R further maintains Sopko's current claim stems from chronic pre-injury seizure condition, rather than from the 1974 accident. Yet the Department in its fact findings determined that Sopko's seizure condition was caused by the unanticipated and unforeseen development of scar tissue stemming from the 1974 work related injury. We accord deference to the findings made and inferences drawn by an agency on questions of fact. *Hendrix v. Graham Tire Co.,* 520 N.W.2d 876, 878–79 (S.D.1994); *Petersen v. Hinky Dinky,* 515 N.W.2d 226, 231 (S.D.1994). Additionally, ample expert testimony supports these findings.

claimant's permanent disability, there is nothing to reopen, and claimant cannot retry the issue of work-connection through the device of a reopening petition.

8 *Larson's Workers' Compensation Law* § 81.32(a). Nothing in the release suggests lack of work connection, only lack of any permanent disability. C & R's quote from Larson's comes from the section dealing with what issues are relevant to "change of condition" reopenings. In the very next section, Larson states "[b]ut if [the claimant] does not know of the other injuries at the time of the original claim, [claimant] is not barred from asserting them in [a] reopening petition. . . . The case is the same if the claimant knew of the existence of the trouble but not of its disabling character." *Id.* § 81.32(b).

[¶ 19.] As the Department correctly held, the settlement agreement cannot deprive it of jurisdiction otherwise conferred by statute in these circumstances. The Department found Sopko's physical condition substantially changed from the time the 1981 settlement was executed and C & R has failed to establish such findings of fact were clearly erroneous.

[¶ 20.] Affirmed.

[¶ 21.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.