1998 SD 82

**BLOOD SYSTEMS, INC., Appellee,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE, Appellant.**

No. 20041.

Supreme Court of South Dakota.

Submitted on Briefs Dec. 2, 1997.

Decided July 29, 1998.

Gene R. Bushnell of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for appellee.

Mark Barnett, Attorney General, Jack C. Magee, Chief Legal Counsel, Pierre, for appellant.

AMUNDSON, Justice.

[¶ 1.] Blood Systems, Inc. (BSI) challenged an assessment made by the Department of Revenue (Department). Eventually, the case reached the circuit court which found that BSI met the requirements of SDCL 10–45–10 as a charitable organization and was exempt from the payment of sales tax for its purchases. Department appeals. We affirm.

## FACTS

[¶ 2.] Blood Systems, Inc. is a nonprofit corporation based in Scottsdale, Arizona, but has a division operating as United Blood Services of South Dakota that serves this state.[1] BSI has offices in Rapid City and Mitchell. BSI's main functions are to secure blood products, test them to see that they are fit for human use, and then distribute those products back to hospitals virtually all across South Dakota. Included in the hospitals served by BSI are governmentally operated Public Health Service hospitals.

[¶ 3.] The actual procurement of the blood is accomplished via a community relations department which secures volunteers throughout the state to sign up blood donors. The blood donors are also volunteers, so BSI does not have to pay for any of its blood with the exception of some rare types. Blood from the donors is then sent to Rapid City where it is processed. As federal regulations change, there is an ever increasing amount of testing done to determine if HIV, hepatitis, irregular antibodies or syphilis is present, along with tests to determine blood type. The blood is then distributed to hospitals and administered to patients according to prescriptions by the treating physicians.

[¶ 4.] BSI has received an exemption from federal income taxes under section 501(c)(3) of the Internal Revenue Code and its articles of incorporation require, in the event of its dissolution, that the corporation's assets be

---

1. For ease of reference, we will refer to Blood Systems, Inc. and its division, United Blood Services of South Dakota, both as BSI.

turned over to other exempt charitable organizations with similar humanitarian purposes. Further, no employee has any ownership interest in the company and employees are compensated through payment of a salary.

[¶ 5.] This case began following a sales and use tax audit by Department, which issued a certificate of assessment, dated July 28, 1994, against BSI in the amount of $90,806.88. On September 8, 1994, BSI requested an administrative hearing to determine if Department's tax assessment was correct. One of the issues raised by BSI was whether it was a relief agency as described in SDCL 10–45–10 and, therefore, exempt from tax.[2]

[¶ 6.] On April 12, 1995, the hearing examiner concluded that he did not have jurisdiction to consider whether BSI was a relief agency, because BSI did not request such a determination from Department. Eventually the Secretary of Revenue authorized the hearing examiner to decide whether BSI constituted a relief agency. Pursuant to agreement by the parties, the hearing examiner conducted separate hearings and issued separate decisions on BSI's petition for declaratory ruling and on the appeal of the tax assessment.

[¶ 7.] On April 24, 1996, the hearing examiner issued his proposed declaratory ruling, holding that BSI constituted a relief agency and was exempt from tax.[3] The Secretary of Revenue, on October 31, 1996, issued his rejection of proposed declaratory ruling and findings of fact, conclusions of law, and declaratory ruling, holding that BSI did not constitute a relief agency and was not exempt from tax.[4]

[¶ 8.] BSI appealed to the circuit court on November 22, 1996. The court, although noting that BSI played an indirect role in the relief of the poor, distressed, or underprivileged, concluded that it satisfied the requirements for a relief agency under SDCL 10–45–10. Consequently, the court adopted the hearing examiner's proposed declaratory ruling, which held that BSI was exempt from tax under the above statute.

[¶ 9.] Department appeals, contesting the finding that BSI is a relief agency.[5]

## STANDARD OF REVIEW

[¶ 10.] Great weight is given to the findings and inferences made by the Department on factual questions. *Sopko v. C & R Transfer Co., Inc.,* 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (citing *Helms v. Lynn's, Inc.,* 1996 SD 8, ¶¶ 9–10, 542 N.W.2d 764, 766; *Finck v. Northwest Sch. Dist. No. 52–3,* 417 N.W.2d 875, 878 (S.D.1988)). "We examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence." *Id.* (citing *In re Northwestern Bell Tel. Co.,* 382 N.W.2d 413, 415 (S.D.1986)). "We will reverse only if we are definitely and firmly convinced that a mistake has been made." *Spitzack v. Berg Corp.,* 532 N.W.2d 72, 75 (S.D.1995) (citing *Day v. John Morrell & Co.,* 490 N.W.2d 720, 723 (S.D.1992)). Questions of law remain fully reviewable. *Caldwell v. John Morrell & Co.,* 489 N.W.2d 353, 357 (S.D.1992).

[¶ 11.] "Statutory interpretation involves questions of law for the circuit court and, as such, our review of such matters is de novo." *In re Estate of Gossman,* 1996 SD 124, ¶ 6, 555 N.W.2d 102, 104 (citing *Sioux Valley Hosp. Ass'n. v. State,* 519 N.W.2d 334, 335 (S.D.1994); *King v. John Hancock Mut. Life Ins. Co.,* 500 N.W.2d 619, 621 (S.D. 1993)). "Statutes exempting property from

---

2. After a 1983 revision to SDCL 10–45–10, the reference to "relief agency" was inexplicably removed while the definition of such an organization remained. We will continue to refer, as the parties to this case have, to a "relief agency" as an organization defined under the pertinent language of SDCL 10–45–10.

3. *See* SDCL 1–26D–6 (stating "[t]he hearing examiner, after hearing the evidence in the matter, shall make proposed findings of fact and conclusions of law, and a proposed decision.").

4. *See* SDCL 1–26D–6 (giving the agency the authority to "accept, reject, or modify" the findings, conclusions and decision of the hearing examiner and allowing for appeal from the agency decision under chapter 1–26).

5. The trial court rendered two decisions on appeal—one regarding the tax assessment audit and one regarding the declaratory judgment. Neither party has appealed the trial court's ruling on the tax assessment audit.

taxation should be strictly construed in favor of the taxing power. The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption." *National Food Corp. v. Aurora Cty. Bd. of Comm'rs*, 537 N.W.2d 564, 566 (S.D.1995) (citations and alterations omitted).

## DECISION

**Whether the circuit court erred in holding that BSI is a nonprofit charitable organization which devotes its resources exclusively to the relief of the poor, distressed, or underprivileged.**

[¶ 12.] The sole question to be resolved is whether BSI falls within the sales tax exemption granted to purchases made by a relief agency under SDCL 10–45–10. This statute reads, in pertinent part, as follows:

> There are hereby specifically exempted from the provisions of this chapter and from the computation of the amount of tax imposed by it, the gross receipts from sales of tangible personal property ... to any nonprofit charitable organization which devotes its resources exclusively to the relief of the poor, distressed or underprivileged, and has been recognized as an exempt organization under § 501(c)(3) of the Internal Revenue Code....

Department, in implementing this statute, promulgated ARSD 64:06:01:38 which specifies a number of factors that will

> be considered, but will not be exclusive, in the final determination of the exemption status request:
>
> (1) The relief agency shall be organized and conducted solely for the benefit of the general public and for relief of the public burden;
>
> (2) A person who needs the services of the relief agency may not be turned away because the person is not able to pay for services;
>
> (3) The relief agency may not provide for gain or profit of any private member of the agency except in the form of a salary;
>
> (4) Upon dissolution the assets of the agency shall be used for charitable purposes;
>
> (5) The relief agency may not present or appear to present any obstacles of any character, such as founders' fees, mandatory assignment of income or property, or minimum fees, to those who need the benefits of the agency;
>
> (6) The average cost of services of the relief agency shall exceed the amount of fees actually collected;
>
> (7) A major source of income of the relief agency must result from gifts, bequests or donations, not current charges;
>
> (8) Allocation of facilities or services of the relief agency may not be related in any way to ability to pay for such facilities or services; and
>
> (9) The relief agency must have an exemption granted pursuant to section 501(c)(3) of the Internal Revenue Code.

Although these criteria "are generally consistent with the accepted definition of a charitable organization, ..." they "are only guides for analysis. Each case must be decided on its own particular facts and it is not essential that every factor ... be present before an institution qualifies for exemption." *East River Legal Services v. State Dep't of Revenue*, 303 N.W.2d 375, 378 (S.D.1981) (citation omitted). As *East River Legal Services* held, the nine criteria are not determinative as to whether an organization qualifies as a relief agency, "as long as it meets the requirements of SDCL 10–45–10." *Id.*

[¶ 13.] Department held that BSI does not qualify as a relief agency under the nine factors of ARSD 64:06:01:38 and does not devote its resources exclusively to the relief of the poor, distressed, or underprivileged as required by SDCL 10–45–10. This decision merely sets forth the Department's bare conclusion without any in-depth analysis as to how the Department arrived at its result. Such a conclusory decision does not assist this court in conducting a meaningful appellate review.

[¶ 14.] On the other hand, the uncontested evidence shows that BSI became established in South Dakota because many South Dakota hospitals were unable to produce their own blood products under the very stringent FDA regulations. Moreover, it was a burden

for many hospitals to anticipate beforehand the number and type of units of blood needed. In addition, costs have continued to rise as the number of tests required expands. No fewer than twelve tests must be conducted to ensure the safety of the blood—a process that would be even more expensive for individual hospitals that lack the economies of scale that BSI enjoys. BSI supplies its products to thirty-two different hospitals in South Dakota, including hospitals run by government. It is undisputed that, if BSI did not provide these services, a governmental agency would be required to take its place. Thus, it is also beyond dispute in this record that BSI "provide[s] a service that would otherwise be provided by the government" and so "lessen[s] a governmental burden." In re *Appeal of Sioux Valley Hosp. Ass'n.,* 513 N.W.2d 562, 566 (S.D.1994). Therefore, we agree that BSI's services are "conducted solely for the benefit of the general public and for relief of the public burden." ARSD 64:06:01:38(1); *see also Department of Revenue v. Central Medical Lab., Inc.,* 555 S.W.2d 632, 634 (Ky.Ct.App.1977) (holding centralized blood testing lab a "purely public charity" and exempt from sales tax because "[t]he general public is the only beneficiary through much lower laboratory fees for the services rendered by the [lab].").

[¶ 15.] As the hearing examiner noted, subparts (2), (5) and (8) of ARSD 64:06:01:38 all focus on the issue of whether persons in need of BSI's services will be denied those services because of their inability to pay. However, *East River Legal Services* made clear that an organization can be entitled to relief agency status even though its users were required, when able, to pay "the actual expenses of litigation, such as filing fees." 303 N.W.2d at 378; *see also Rio Vista Non–Profit Hous. Corp. v. Ramsey Cty.,* 277 N.W.2d 187, 192 (Minn.1979) (holding the fact that an organization "receives some remuneration from those it benefits does not deprive the institution of its charitable exemption"). In essence, BSI does not charge anything for the blood that it provides. Its policy is to recover the cost of processing the blood. Hospitals frequently contact BSI to arrange for a waiver of charges when pa-

tients are unable to pay and even hospitals, themselves, will have their charges "written off" when they are unable to pay BSI. In addition, if blood cannot be obtained locally, BSI will procure the blood from outside the community, but will not pass on the increased costs. Thus, we agree with the finding of the hearing examiner and the circuit court that BSI will not "turn away" any person who needs its services; nor "present any obstacle" to those who need its services; nor allocate its services in relation to "ability to pay." Therefore, the conditions of ARSD 64:06:01:38(2), (5) and (8) are met.

[¶ 16.] The requirement of ARSD 64:06:01:38(3) is also met because the employees of BSI are compensated purely by salary. No employee of BSI has any ownership interest in the company. However, Department takes issue with BSI employee benefits like paid vacations and holidays, contending that they are beyond the scope of "salary." However, we cannot agree with Department's strict interpretation of its rules when such a reading would force charitable organizations to deprive their employees of standard benefits. We must be mindful that "exemption from taxation is based upon considerations of public policy and should be given reasonable, natural and practical construction to effectuate such policy." *East River Legal Services,* 303 N.W.2d at 379 (citing *National College of Business v. Pennington County,* 82 S.D. 391, 146 N.W.2d 731 (1966)). No reasonable interpretation of SDCL 10–45–10 would require that employees of charitable organizations forego all standard benefits. If Department's interpretation was correct, the public policy of encouraging the formation and operation of charitable organizations would be severely retarded.

[¶ 17.] BSI also meets the requirements of ARSD 64:06:01:38(4), since its articles of incorporation require that upon dissolution its assets be turned over to another charitable organization. The pertinent language provides that the assets shall be distributed to

foundations, corporations, societies, associations and institutions (a) which by reason of their charitable, scientific or educational purposes have been held to be exempt from the payment of federal income taxes, (b) which are engaged in activities related

directly or indirectly to public health, and (c) whose broad humanitarian purposes are similar to those of [BSI].

Department contends that this is insufficient. However, the relevant rule actually provides that the assets of BSI, on dissolution, must be "used for charitable purposes." ARSD 64:06:01:38(4). We hold that BSI's dissolution clause meets that test.

[¶ 18.] Turning to the next issue, the evidence revealed that currently the average cost of BSI's services exceeds the fees collected as required by ARSD 64:06:01:38(6). Furthermore, despite the fact that past years did not result in the same outcome, any excess has been utilized to improve various aspects of BSI's services. This is similar to *Mayo Foundation v. Com'r of Revenue*, 306 Minn. 25, 236 N.W.2d 767 (1975), relied upon by this Court in *East River Legal Services.* In *Mayo Foundation*, a clinic was found entitled to a charitable exemption even though it

> experienced an increase in net worth during the tax periods in question of approximately 4 to 6 percent per year. There [was] no indication that medical charges were established with a view toward generating a profit for the Foundation, and the modest increase in the Foundation's net worth appear[ed] consistent with its goals of providing high-quality medical care and advancing medical education and research.

236 N.W.2d at 773–74. Just as in *Mayo,* there has been no showing that BSI operates with a view toward profit making, nor has there been evidence to contradict BSI's claim that it has plowed all surpluses back into necessary operational expenditures.

[¶ 19.] The next requirement is that a major source of BSI's income results from "gifts, bequests or donations, not current charges." ARSD 64:06:01:38(7). This factor depends on which way it is approached. On the one hand, BSI only receives small donations of cash and equipment relative to expenditures. On the other hand, the blood itself, and the time and effort of volunteers to procure it, are almost entirely donated.

[¶ 20.] Finally, BSI clearly satisfies ARSD 64:06:01:38(9) as it does have a § 501(c)(3) exemption. On the whole then, examination of the nine factors leads us to conclude that BSI is a "nonprofit charitable organization which devotes its resources exclusively to the relief of the poor, distressed or underprivileged" pursuant to SDCL 10–45–10. While BSI may not fit squarely within all nine criteria, that is not required, and a reasonable interpretation of the administrative rules mandates that BSI qualify as a relief agency.

[¶ 21.] Turning to the actual requirements of SDCL 10–45–10, it becomes plain that BSI is also within the realm of a relief agency under the plain language of the statute. Department disagrees, contending that BSI's resources. must be devoted *directly* to the sick or injured, not via a hospital. However, the language of SDCL 10–45–10 speaks in terms of devoting resources to the "relief of the poor, distressed or underprivileged." The circuit court explained, in light of the wording of the statute, why it believed Department's view was incorrect:

> This Court is of the view that the Legislature had to have meant something when it said *relief of the.* And had that language not been in there, I could agree with the Department's view that the Taxpayer would have to devote its resources directly to the [poor, distressed or underprivileged], but by inserting that language, I think that that means that if the ultimate relief that's being provided by their service and product is the distressed, they're entitled to the exemption. (Emphasis added.)

We agree with the circuit court's view that the language of SDCL 10–45–10 is more expansive than the cramped reading that Department proposes. We also agree that the recipients of the blood obviously are within the meaning of "distressed" persons under the statute. Therefore, we affirm the trial court's decision that BSI is a relief agency entitled to exemption under SDCL 10–45–10.

[¶ 22.] Affirmed.

[¶ 23.] MILLER, C.J., SABERS, KONENKAMP, and GILBERTSON, JJ., concur.